J. Marshall MEDLIN, et al.,
Plaintiffs–Appellants,

v.

Lori PALMER, in her individual capacity and in her official capacity as Dallas City Councilwoman, et al., Defendants–Appellees.

Nos. 88–1060, 88–1118, 88–1646
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 13, 1989.
Rehearing Denied July 28, 1989.

Donovan Campbell, Jr., Locke, Purnell, Rain & Harrell, Dallas, Tex., J. Shelby Sharpe, Fort Worth, Tex., for plaintiffs-appellants.

Carla Perantoni Walsh, Washington, D.C., for amicus curiae Feminists for Life of America, Inc.

James M. Braden, David A. French, Manassas, Va., John W. Whitehead, Culpepper, Va., for amicus curiae, the Rutherford Institute.

Paul K. Pearce, Jr., Margaret Mary O'Neill, Asst. County Attys., Dallas, Tex., for Palmer, et al.

Jeff Smith, Cedar Hill, Tex., for Dr. William W. West.

Carol Stephenson, Maureen N. Armour, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for Pettigrew, et al.

David E. Bird, Dallas Swan, Bedsole & Bird, Dallas, Tex., for Osborne, et al.

Alfred L. Ruebel, Bridget A. Braithwaite, Erhard, Ruebel & Jennings, Dallas, Tex., for Taft, et al.

Neil H. Cogan, Dallas, Tex., for Dallas Medical Ladies Clinic, et al.

Michael F. Linz, Dallas, Tex., for amicus curiae Dallas Civ. Liberties Union.

Before CLARK, Chief Judge, and JOHNSON and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiffs/appellants, various anti-abortion activists who challenge the constitutionality of a Dallas city ordinance prohibiting the use of amplified sound near certain medical and educational facilities, appeal from the district court's denial of their motion for preliminary injunction, the grant of a defense motion for summary judgment, and the grant of a defense motion for judgment on the pleadings. Concluding that the district court's actions were not improper, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

On July 17, 1985, the Dallas City Council amended existing Dallas City Ordinance No. 13744 that banned the use of loudspeakers which caused "loud and raucus noises" within 300 feet of any hospital or school. Modifications to the ordinance included the following: the ordinance as amended prohibited loudspeaker use within 150 feet of schools which were in session, within 150 feet of single-family, duplex, or multiple family dwellings, within 150 feet of a hospital, nursing home, or any facility that provides outpatient surgical services. The amended ordinance provided for a

maximum $200 fine, upon conviction, for violators of any provision of the ordinance.[1]

The Dallas City Council's amendment of the old ordinance took place at a time when certain individuals and groups, including three of the plaintiffs in the instant action, were picketing various clinics in the Dallas area which performed abortions. These individuals and groups, in the pursuit of their moral, religious and political objectives, had been utilizing hand-held amplifiers or "bullhorns" to project their sentiments to clinic patrons from sidewalk vantage points. The amended ordinance (hereafter the "ordinance") effectively banned this particular activity since the sidewalks which had been used by the protestors fell within the 150 foot "quiet zone" surrounding each facility. The protestors nevertheless were free to picket, distribute literature, and speak without the bullhorns.

In August 1985, plaintiff/appellant Marshall Medlin (Medlin) was using a bullhorn to read his Bible within the "quiet zone" around Dallas' Routh Street Clinic when he was arrested by Dallas police for violating the ordinance. Similarly, that month plaintiff/appellant Jeanene Clarke (Clarke) was threatened with arrest for delivering a religious message via bullhorn while standing

---

1. The ordinance as amended reads as follows:
BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF DALLAS:
SECTION 1. That Section 30-4, "Loudspeakers and Amplifiers—Non–Commercial Use," of CHAPTER 30, "NOISE," of the Dallas City Code, as amended, is amended to read as follows:
"SEC. 30-4. LOUDSPEAKERS AND AMPLIFIERS
(a) Any person who operates or causes to be operated in a public place or upon the public sidewalks, streets, alleys, or highways of the city, any mechanical loudspeaker or sound amplifier shall comply with the following limitations and requirements:
(1) Such loudspeaker or sound amplifier shall be limited in operation that is within 150 feet of a single-family, duplex, or multiple family dwelling (as defined in the Dallas Development Code) to times between the hours of 8:00 a.m. and sunset as designated by publication in a local newspaper of general circulation.
(2) Such loudspeaker or sound amplifier shall not emit loud and raucous noises so as to interfere with the enjoyment of life or property or to interfere with public peace and comfort.
(3) Such mechanical loudspeaker or sound amplifier shall be operated so as not to cause traffic congestion or congregation of crowds which obstruct the public streets, alleys, or highways.
(4) Such loudspeaker or sound amplifier shall not be operated within 150 feet of any:
(A) hospital;
(B) school that is in session;
(C) nursing home; or
(D) facility that provides surgical services to patients who do not require overnight hospital care during the hours of operation of the facility.
(b) For purposes of this section, SURGICAL SERVICES means therapy of a mechanical or operative kind, including, but not limited to operations involving cutting, the setting of fractures and dislocations, and similar manual forms of treatment.
(c) If conduct that would otherwise violate this section consists of speech or other communication, of gathering with others to hear or observe such speech or communication, or of gathering with others to picket or otherwise express in a nonviolent manner a position on social, economic, political, or religious questions, the person must be ordered to move, disperse, or otherwise remedy the violation prior to his arrest or citation.
(d) The order required by subsection (c) may be given by a peace officer, a fireman, a person with authority to control the use of the premises, or any person directly affected by the violation.
(e) It is a defense to prosecution under subsection (a) that:
(1) in circumstances in which this section requires an order no order was given;
(2) an order, if given, was manifestly unreasonable in scope;
(3) an order, if given, was promptly obeyed; or
(4) the mechanical loudspeaker or sound amplifier was operated in a public place within an enclosed structure and was not audible beyond the property line of the premises on which it was located."
SECTION 2. That a person violating a provision of this ordinance, upon conviction, is punishable by a fine not to exceed $200.
SECTION 3. That CHAPTER 30 of the Dallas City Code, as amended, shall remain in full force and effect, save and except as amended by this ordinance.
SECTION 4. That the terms and provisions of this ordinance are severable and are governed by Section 1-4 of CHAPTER 1 of the Dallas City Code, as amended.
SECTION 5. That this ordinance shall take effect immediately from and after its passage and publication in accordance with the provisions of the Charter of the City of Dallas, and it is accordingly so ordained.

in the "quiet zone" around Dallas Medical Ladies Clinic in violation of the ordinance. Finally in August, 1985, plaintiff/appellant Akemi Porier (Porier), was threatened with arrest for using a bullhorn to administer a religious message also within the "quiet zone" surrounding the Metroplex clinic.

Thereafter, Medlin, Clarke and Porier each filed suit in the United States District Court against members of the Dallas City Council, the Dallas Chief of Police (the "city defendants"), various Dallas area abortion clinics (the "clinic defendants"), and certain other individuals. Medlin, Clarke and Porier alleged that the ordinance was unconstitutional because it violated their First Amendment rights, improperly delegated interpretive powers, and was vague. Medlin also alleged that he was falsely arrested and imprisoned. Another plaintiff/appellant, Last Harvest Ministries, Inc., contended that the ordinance violates the Equal Protection clause because it does not include within its provisions, similar protection for abortion alternative facilities. Further, the plaintiffs alleged that the Dallas city defendants conspired with the clinic defendants to deprive the plaintiffs of their constitutional rights in violation of 42 U.S.C. §§ 1983, 1985 and 1986. Moreover, the plaintiffs essentially accused the city defendants and the Dallas Police Department of engaging in a virtual "wave of terror" against them through selective overenforcement of the ordinance.

Based on the foregoing allegations, the plaintiffs sought a preliminary injunction to prevent enforcement of the ordinance. The district court, concluding that the plaintiffs had failed to demonstrate a substantial likelihood of success on the merits of the case denied the motion for a preliminary injunction. Meanwhile, the city defendants moved for summary judgment and the clinic defendants moved to dismiss the complaint as against them on Rule 12(b)(6) grounds. The district court granted the motion for summary judgment in favor of the city defendants on core constitutional issues and the private defendants' Rule

12(b)(6) motion to dismiss. The plaintiffs thereafter filed three separate appeals; they appealed the denial of their motion for a preliminary injunction, the grant of partial summary judgment in favor of the city defendants, and the grant of the Rule 12(b)(6) motion in favor of the clinic defendants. Because the various legal issues presented by the three separate appeals arise from the same set of operative facts, this Court has, on its own motion,[2] consolidated these cases.

## II. DISCUSSION

At the outset, we are compelled to recognize the depth and intensity of emotion associated with the moral, religious and political concerns which underlie the legal issues in this controversy. While we remain mindful of this circumstance and the evocative nature of the case, we are nevertheless constrained to focus on the legal issues presented by this appeal. The central legal issue which the district court faced, and which we now must address, is the constitutionality of the amended ordinance. In the district court, the plaintiffs maintained that the ordinance is unconstitutional on several grounds. They contended that the ordinance is vague, that it constitutes an unconstitutional delegation of interpretive powers and that the ordinance unconstitutionally deprives them of their First Amendment rights of freedom of speech and free exercise of religion. The district court, however, concluding that the ordinance was constitutional as a matter of law, granted summary judgment in favor of the city defendants.

■ On appeal, the plaintiffs lodge several arguments with respect to the district court's grant of summary judgment. On brief, they contend that the city defendants should have established through evidentiary materials all elements of a viable defense, and that because the city defendants failed to do so, the district court should have denied their motion for summary judgment. In that regard, the plaintiffs direct our attention to the fact that the city

2. Federal Rule of Appellate Procedure 3(b). We also note that the district court certified the partial summary judgment pursuant to Fed.R. Civ.P. 54(b).

defendants, in moving for summary judgment, failed to attach "a single affidavit" to their motion for summary judgment but rather attached only a certified copy of the ordinance itself. Moreover, on brief, the plaintiffs argue that because the city defendants failed to "meet this procedural requirement of submitting sufficient evidentiary materials to establish the essential elements of their defense" the district court should not have granted the defense motion for summary judgment. They advance the argument that this circumstance, standing alone, is sufficient to warrant reversal of the district court judgment. The Supreme Court, however, in the vanguard case on summary judgment, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), rejected such an argument. In *Celotex*, the Court concluded that Fed.R.Civ.P. 56 which governs the grant of summary judgment motions carries "no express or implied requirement [that the motion be supported] with affidavits or other similar materials *negating* the opponent's claim." *Id.* 106 S.Ct. at 2553 (emphasis in the original). Thus, this argument of the plaintiffs is without merit.

■ Plaintiffs next allege that the grant of the motion for summary judgment was error because the plaintiffs submitted to the district court an exhaustive list of facts which they believed to be material and in dispute. Fed.R.Civ.P. 56(c) provides that summary judgment is not improper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. In the instant case, the district court, after a review of the allegedly material facts advanced by the plaintiffs, concluded that there existed no genuine issue of material fact with respect to the constitutionality of the ordinance. The district court further held that the constitutionality of the ordinance was solely a matter of law and proceeded to rule on the motion for summary judgment accordingly. We are constrained to agree with the district court that the constitutionality of the ordinance in the instant case is solely a matter of law. In so holding, we are mindful that appellate review of a grant of summary judgment rests on the same Rule 56 standards that applied in the district court. *GATX Aircraft Corp. v. M/V COURTNEY LEIGH*, 768 F.2d 711 (5th Cir.1985); *John v. State of Louisiana*, 757 F.2d 698 (5th Cir.1985); *United States Steel Corp. v. Darby*, 516 F.2d 961 (5th Cir.1975). Further, we are cognizant of the fact that the record and any inferences therefrom are to be viewed in a light most favorable to the nonmovant. *Walters v. City of Ocean Springs*, 626 F.2d 1317 (5th Cir.1980).

■ The "public forum" doctrine dictates that restrictions placed upon speech are typically subject to higher scrutiny when the speech occurs in areas historically associated with first amendment activities such as streets, sidewalks and parks. *See e.g., Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (striking down a city ordinance forbidding all public meetings in streets and other public places without a permit). At the same time, "[t]he privilege of a citizen of the United States to use the streets and parks for communication of views on national questions ... is not absolute...." *Id.* at 515–16, 59 S.Ct. at 963–64. Indeed, the first amendment does not guarantee the right to communicate one's view at all times and places or in any manner that one desires. *Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 647, 101 S.Ct. 2559, 2563, 69 L.Ed.2d 298 (1981). In that regard, city ordinances which are content neutral with only time, place and manner restrictions, and which are designed to serve a substantial governmental interest and do not unreasonably limit alternative communication are acceptable. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986). The highest level of scrutiny, on the other hand, is reserved for those ordinances restricting speech that are content based. *Consolidated Edison Co. of New York v. Public Service Comm'n of New York*, 447 U.S. 530, 536, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980).

 The Supreme Court has defined content neutral speech regulations as those that regulate "without reference to the content of the regulated speech." *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976). The plaintiffs in this appeal strenuously argue that the ordinance is not content neutral. They contend that it is actually content-based and is tailored so as to prevent them from communicating their religious and moral views to patrons of abortion clinics. As the district court correctly noted, however, the language of the ordinance falls short of supporting the plaintiffs' assertions. The ordinance makes no reference whatsoever to the content of speech; rather, it merely prohibits amplified speech within 150 feet of certain facilities without regard for what is being said. It is tailored so as to protect people suffering from ill health, the aged, and school children from the nuisance of loudspeaker noise regardless of what message issues from the loudspeaker. Thus, the ordinance, as a time, place, and manner regulation, is constitutionally valid provided that it is "designed to serve a substantial governmental interest and [does] not unreasonably limit alternative avenues of communication." *Playtime Theatres, Inc.*, 106 S.Ct. at 928.

In that regard, the plaintiffs argue that the ordinance unreasonably restricts alternate methods of communication and is thus violative of their free speech rights. Specifically, plaintiff Medlin asserts that he needs to use a bullhorn in order to save his voice for his vocation. Clarke and Porier allege that they are unable to reach significant portions of their desired audience without resort to bullhorns because of the physical configurations of the clinics and adjacent sidewalks. We find neither argument persuasive. As the district court noted, the ordinance prevents the use of amplified sound in close proximity to certain institutions such as hospitals and convalescent homes without unnecessarily impinging on alternate methods of communication. It does not prohibit unamplified speech. It does not prohibit the distribution of written material. It does not prohibit the display of signs and placards nor does it prohibit any symbolic speech. Accordingly, as the district court concluded, the ordinance falls way short of precluding alternative avenues of communication, *see Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984), and serves a legitimate governmental interest in protecting patients of hospitals and clinics from the unwarranted intrusion of amplified sound generated by "pro-life" activists. Moreover, this Court has previously affirmed the prerogative of a municipality to enact narrow and precisely drawn restrictions on the use of sound amplification equipment in public. *Reeves v. McConn*, 631 F.2d 377 (5th Cir.1980).

 The plaintiffs contend that the ordinance is "hopelessly vague" and violates the Due Process Clause of the Fourteenth Amendment. The opinion of the district court recites the traditional standard for unconstitutional vagueness—if the terms of an ordinance are so indefinite that men of common intelligence must necessarily guess at its meaning and differ as to its application, the ordinance is unconstitutionally vague. *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). If the ordinance under scrutiny potentially restricts the right of freedom of speech, then the standard is more stringent. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982); *Hynes v. Mayor and Council of Borough of Oradell*, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976). The plaintiffs take issue, on vagueness grounds, with several of the ordinance's provisions. For example, they complain that the ordinance fails to define "any mechanical loudspeaker or sound amplifier" and that the adjective "mechanical" could modify either "loudspeaker" or "sound amplifier." In that regard, the contend that the hand cupped around the mouth could give rise to a violation of the ordinance because of the purported uncertainty of the word being modified by "me-

chanical." They also find fault with the "within 150 feet" language and argue that no one could determine whether the ordinance means 150 feet from the front door or the back door of a given facility. Plaintiffs make other vagueness arguments that will not be addressed herein; however, suffice it to say, we find them all unpersuasive. Borrowing, as the district court did, pertinent language from *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 we recognize that so long as we are "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." 408 U.S. at 110, 92 S.Ct. at 2299. We thus are unable to disagree with the district court's conclusion that the terms of the ordinance are not so indefinite that men of common intelligence must necessarily guess at its meaning and differ as to its application. *Connally*, 269 U.S. 385, 391, 46 S.Ct. 126, 127.

■ The plaintiffs next argue that the ordinance violates their first amendment right to the free exercise of religion. The ordinance itself, however, makes no reference to religious beliefs; and, as the district court observed, all persons, regardless of their religious beliefs, are prohibited from using amplified speech near certain medical and educational facilities. Accordingly, we find no error in the district court's conclusion that the ordinance does not burden the plaintiffs first amendment right of free exercise of religion.

■ The plaintiffs also advance the argument that the ordinance gives rise to an unconstitutional delegation of interpretive police power. In support of this contention, plaintiffs cite language from the ordinance which requires that a police warning to "move or disperse" be given to those whose conduct would be violative of the ordinance but who are expressing a position on social, economic, political or religious issues. The plaintiffs contend that this language allows for selective enforcement of the ordinance. Specifically, they argue that the enforcement process is initiated by the "order" being given and that the "order" can be triggered on the basis of the content alone. The plaintiffs fail to recognize that this provision works to their advantage. It provides for them and others similarly situated, a defense to prosecution under the ordinance if the requisite warning is not given. Therefore, we conclude, as did the district court, that the warning provision of the ordinance furnishes safeguards to protestors who would otherwise be faced with arrest and prosecution, and is not an unconstitutional delegation of police power.

In these consolidated appeals, the plaintiffs urge that the district court improperly denied their motion for preliminary injunction. In order to obtain a preliminary injunction, a movant must show: 1) a substantial likelihood of success on the merits, 2) a substantial threat that irreparable injury will result if the injunction is not granted, 3) that the threatened injury to the movant outweighs the threatened harm to the non-movant, 4) that granting the injunction will not disserve the public interest. *Boyd v. Roland*, 789 F.2d 347, 349 (5th Cir.1986). The failure of a movant to establish one of the above four elements will result in the denial of a motion for temporary injunction. *Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618, 621 (5th Cir.1985). The district court found that the plaintiffs' motion for preliminary injunction failed to satisfy the first element cited above and on that basis denied the motion. Since we have concluded that the ordinance is constitutional as a matter of law, we are unable to find fault with the district court's denial of the motion for temporary injunction on that basis.

As a final matter, we note that because the plaintiffs' conspiracy arguments against the various city and clinic defendants are contingent upon a finding that the ordinance is unconstitutional, and because we have concluded that the ordinance is constitutional, the dismissal of those conspiracy claims by the district court was not improper. We find all other arguments by the plaintiffs to be unpersuasive.

## III. CONCLUSION

We conclude that the ordinance in question is narrowly drafted and is of sufficient

precision so as to pass constitutional muster. Because we have so concluded, we affirm the district court's denial of the plaintiffs' motion for a preliminary injunction. Further, we affirm the district court's grant of partial summary judgment in favor of the city defendants and the dismissal of all claims as against the clinic defendants.

AFFIRMED.