

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 9, 1991

Mr. Joe E. Milner
Director
Texas Department of Public Safety
P. O. Box 4087
Austin, Texas 78773-0001

Opinion No. DM-64

Re: Whether the Texas Krishnas may distribute religious literature on Department of Public Safety property (RQ-68)

Dear Mr. Milner:

You have asked whether religious groups may distribute religious literature and solicit donations on property of the Department of Public Safety (the "department"). You inform us that the department has received a request from the Texas Krishnas for "clarification of the parameters within which our religious organization's volunteers can from time to time distribute religious literatures ... and receive donations" on the department's property. You ask us to address this issue both in light of article V, section 83, of the current Appropriations Act, which prohibits the use of state property for private purposes, and the first amendment of the United States Constitution.

We turn first to your query regarding the United States Constitution.[1] The first amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . . . " This prohibition is equally applicable to the states, and applies to the department as an entity of the State of Texas. *See Fiske v. Kansas*, 274 U.S. 380 (1927); L. TRIBE, AMERICAN CONSTITUTIONAL LAW § 11-2 at 567-69 (1978).[2]

---

[1] We address these issues in this order, because if the United States Constitution were to require the department to allow the Krishnas to use its property for expressive activity, then this requirement would prevail over any prohibition in the Appropriations Act. *See* U.S. Const. art. VI, cl. 2.

[2] The Texas Bill of Rights states that "[e]very person shall be at liberty to speak, write or publish his opinions on any subject . . . and no law shall ever be passed curtailing the liberty of speech or of the press." Tex. Const. art. I, § 8. An appeals court has suggested in a case involving expressive activity on public property that the Texas constitutional provisions guaranteeing freedom of expression are coextensive with the federal guarantees. *Reed v. State*, 762 S.W.2d 640, 644 (Tex. App.--Texarkana 1988, pet. ref'd). The Texas Supreme Court, however, has expressly reserved judgment on the question whether Texas' guarantee of free speech affords greater protection than the first amendment of the United States Constitution. *O'Quinn v. State Bar of Texas*, 763 S.W.2d 397, 402 (Tex. 1988). Because

You suggest that distribution of literature and solicitation of funds are activities that are not protected by the first amendment. We disagree. It is clearly established that distributing literature is an expressive activity protected by the first amendment. *See United States v. Grace*, 461 U.S. 171, 176-77 (1983) (citing cases). Charitable solicitation of funds and the distribution of written materials in exchange for contributions or gifts have also been recognized as forms of protected speech. *See, e.g., Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 797-98 (1985) (citing cases); *Heffron v. International Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981) (citing cases). Indeed, the United States Supreme Court has recently reaffirmed that solicitation is a form of speech protected by the first amendment. *See United States v. Kokinda*, 110 S. Ct. 3115, 3118, 3126 (1990).[3]

The right to engage in these forms of speech, however, is not absolute:

> Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.

*Cornelius*, 473 U.S. at 799-800. In balancing the government's interest in limiting the use of its property against the interests of those who wish to use the property for expressive activity, the United States Supreme Court has identified three types of fora. *Board of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 572 (1987). These fora include the "traditional public forum," the "public forum created by government designation," and the "nonpublic forum." *Id.* The traditional public forum, a public space historically associated with the free exercise of expressive activities, includes streets, sidewalks, and parks. *Grace*, 461 U.S. at 177; *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989). *But see Kokinda*, 110 S. Ct. at

---

you have not asked us to address the Krishnas' request to distribute literature and solicit funds on department property in light of the Texas Constitution, we do not do so here.

[3]The cases you cite are not to the contrary. *See International Soc'y for Krishna Consciousness v. Lee*, 925 F.2d 576, 579 (2d Cir. 1991) (defendant and court did not dispute that solicitation of contributions and distribution of religious literature are protected speech); *Paulsen v. County of Nassau*, 925 F.2d 65, 67 (2d Cir. 1991) ("freedom to circulate fliers implicates fundamental liberties"); *Carew-Reid v. Metropolitan Transp. Auth.*, 903 F.2d 914, 916 (2d Cir. 1990) ("music, as a form of expression, is protected by the First Amendment"). In *Young v. New York City Transit Auth.*, 903 F.2d 146, 154-55 (2d Cir. 1990), the court concluded that street begging is not protected speech but was careful to distinguish it from solicitation of funds with a "sufficient nexus" with speech.

3120 (plurality opinion). A "public forum by government designation" (sometimes called a "limited public forum") arises when the government has intentionally designated a place or means of communication as a public forum. *Cornelius*, 473 U.S. at 800. The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse. *Id.* at 802. A "nonpublic forum" is an area which is not by tradition or designation a forum for expressive communication. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).

In response to your query regarding the kinds of restrictions the department may impose on expressive activity, the proper first amendment analysis depends upon the nature of the state property in question. The department may enforce "reasonable time, place, and manner regulations" in a traditional public forum or a public forum created by government designation as long as the restrictions "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Grace*, 461 U.S. at 177 (quoting *Perry Educ. Ass'n*); *Medlin*, 874 F.2d at 1089. Content-based restrictions are subject to the highest level of scrutiny. *Medlin*, 874 F.2d at 1089 (citing *Consolidated Edison Co. of New York v. Public Serv. Comm'n of New York*, 447 U.S. 530 (1980)). A nonpublic forum may be reserved by the department "for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Educ. Ass'n*, 460 U.S. at 46.

The department has informed us that the Krishnas have asked to distribute literature in a parking lot adjacent to a department office building where members of the public apply for various licenses. The department has further informed us that this area has not been open historically as a public forum and that it has never granted the request of any other group to use the area for expressive activity. Assuming these facts are true, we believe that a court would conclude that the area in question is a "nonpublic forum," and therefore that the department may restrict access to the area as long as the restriction is reasonable and not an effort to suppress expression merely because department officials might oppose the Krishnas' views. Because we are not a fact-finding body and are thus unable to take evidence or make findings of fact, however, we cannot determine the specific nature of the area in this opinion. Moreover, even assuming that the subject parking lot *is* most properly categorized as a nonpublic forum, we would not be able to assess in the opinion process the reasonableness of the department's policies or the propriety of department officials' motives in promulgating that policy. Of course, the department may decide to designate the parking lot or other property as a public

forum.[4] In that case, the department may enact reasonable time, place, and manner regulations as long as the restrictions are content-neutral, are narrowly tailored to serve a significant state interest, and leave open ample alternative channels of communication. *See Heffron, supra*, at 648-56.[5]

Finally, you have also asked whether the Appropriations Act *prohibits* the department from permitting the Krishnas to distribute literature and solicit funds on its property. Section 83 of article V of the current Appropriations Act provides, "No person shall entrust state property to any state official or employee or to anyone else to be used for other than state purposes." General Appropriations Act, Acts 1991, 72d Leg., 1st C.S., ch. 19, § 83, at 1037. Although the legislative history of this language is not well-documented,[6] we do not believe that this provision is intended to apply to the situation at hand. This provision is identical to language in article 8 of the State Purchasing and General Services Act. *See* V.T.C.S. art. 601b, § 8.03(d) (formerly V.T.C.S. art. 6252-6, § 5(c), *repealed by* Acts 1979, 66th Leg., ch. 773, § 99.05, at 1960).[7] That provision of the State Purchasing and General Services Act clearly applies solely to state-owned *personal* property as opposed to real property. *See id.* § 8.01(a) ("This article applies to personal property belonging to the state"). Thus, we believe that the appropriations provision is also intended to apply solely to the use of state-owned personal property and is inapplicable here. Furthermore, even if article V, section 83, of the Appropriations Act applies to *real* property, we believe that the transitory use of state-owned real property for expressive activity protected by both the United States and Texas Constitutions does not constitute entrustment of state property. Therefore, we conclude that article V, section 83, of the Appropriations Act does not prohibit the department from permitting Krishnas to distribute literature and solicit funds on its property.

---

[4]We assume from your letter that the department has sufficient authority over the parking lot in question to designate it as a public forum.

[5]The department has not asked us to render an opinion regarding proposed "time, place, and manner" regulations and, even if it had, it would be difficult for us to assess the "reasonableness" of any such regulations in the opinion process.

[6]Past appropriations acts have contained identical language. *See* Acts 1989, 71st Leg., ch. 1263, art. V, § 88, at 5804; Acts 1987, 70th Leg., 2d C.S., ch. 78, art. V, § 85, at 869; Acts 1985, 69th Leg., ch. 980, art. V, § 92, at budget 514. We do not address whether this is a valid rider.

[7]The 72d Legislature repealed article 8 of the State Purchasing and General Services Act "on certification by the comptroller of the implementation of the fixed asset component of the uniform statewide accounting system." Acts 1991, 72d Leg., 2d C.S., ch. 8, § 6.01(d), at 175. The comptroller has not yet issued such a certification.

## SUMMARY

Distributing literature and charitable solicitation of funds are expressive activities protected by the first amendment of the United States Constitution. Balancing the Department of Public Safety's interest in limiting the use of its property against the interests of those who wish to use the property for expressive activity requires findings of fact and is not amenable to the opinion process. If the department has not opened its property as a public forum, it may restrict access to the area as long as the restriction is reasonable and is not an effort to suppress the views of a certain group. On the other hand, if it wishes to do so, the department may designate its property as a public forum. In that case, the department may enact reasonable time, place, and manner restrictions regulating the use of its property for expressive activity. Article V, section 83, of the Appropriations Act does not prohibit the department from permitting groups to engage in such activities on its property.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General