**Glen ALLISON, et al.**

v.

**TARRANT COUNTY, TEXAS, et al.**

**No. Civ.A. 4:98–CV–956–Y.**

United States District Court,
N.D. Texas,
Fort Worth Division.

April 20, 2000.

Jason C.N. Smith, Art Brender, Law Offices of Art Brender, Fort Worth, TX, for Glenn Allison and Steve Henry.

Russell Friemel, Tarrant County District Attorney's Office, Fort Worth, TX, for defendants.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MEANS, District Judge.

Pending before the Court is Defendant Tarrant County's Motion for Summary Judgment, filed January 12, 2000 [doc. # 38–1]. Having carefully considered the motion, response, and reply, the Court finds that the motion should be DENIED.

### I. FACTS

Plaintiffs Glen Allison and Steve Henry, who are deputies employed by the sheriff's department of defendant Tarrant County, initiated this action under 42 U.S.C. § 1983 alleging unlawful discrimination and retaliation due to their political associations or affiliations. In 1996, Plaintiffs had been assigned to the warrants division of the sheriff's department for 10 and 11 years, respectively. During that year, Allison publicly sought the nomination of the democratic party for Tarrant County Sheriff but lost the primary election to Bill McClendon. Following McClendon's victory, Plaintiffs publicly supported McClendon's campaign for sheriff against the Republican incumbent, David Williams. Plaintiffs agreed to allow McClendon to publish their names on a list of supporters in a newspaper advertisement, which appeared in the Fort Worth Star–Telegram on November 3, 1996. Sheriff Williams was reelected on November 5, 1996. Eleven days later, on November 16, Plaintiffs were informed via an interoffice memorandum that they were being reassigned to positions outside the warrants division. Allison was reassigned to a position at the jail release desk in the confinement division. Henry was reassigned to a position in the courts security division, operating an x-ray machine at the Tarrant County Justice Center. Two other deputies whose names appeared in the newspaper advertisement also were transferred pursuant to the November 16 memorandum.

Plaintiffs allege that their reassignments to less prestigious and less desirable positions were the result of unlawful retaliation in response to their participation in activities protected by the First Amendment. Although Plaintiffs originally named both the county and Sheriff Williams as party defendants, this Court denied Plaintiffs' request to assert a claim against Sheriff Williams in his individual capacity.[1] Therefore, the initial question before the Court is whether Tarrant County may be held liable under § 1983 for the employment actions alleged by Plaintiffs. If so, the Court then must decide whether any genuine issues of material fact remain with regard to the legality of the county's actions.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the record establishes that no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Hill v. London, Stetelman, & Kirkwood, Inc.,* 906 F.2d 204, 207 (5th Cir.1990). To determine whether an issue of material fact exists, the Court must first consult the applicable substantive law to ascertain what fact issues are material to the disposition of the case. *Lavespere v. Niagara Mach. & Tool Works,* 910 F.2d 167, 178 (5th Cir.1990), *cert. denied,* 510 U.S. 859,

---

1. *See* Order Granting in Part Motion for Leave to Amend, filed February 19, 1999 [doc. # 14–2].

114 S.Ct. 171, 126 L.Ed.2d 131 (1993). The Court must then review the evidence presented, viewing the facts and inferences drawn from those facts in the light most favorable to the nonmoving party. *Newell v. Oxford Management Inc.*, 912 F.2d 793, 795 (5th Cir.1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir.1989). However, the Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the movant bears the burden of proof on a claim or defense, he must establish all elements of the claim or defense to prevail on summary judgment. *Western Fire Ins. Co. v. Copeland*, 651 F.Supp. 1051, 1053 (S.D.Miss.1987), *aff'd*, 824 F.2d 970 (5th Cir.1987).

When the moving party has carried its summary judgment burden, the respondent "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The respondent must produce evidence, not merely argument, in response to a movant's properly supported motion for summary judgment. *See Foval v. First Nat'l Bank of Commerce*, 841 F.2d 126, 129 (5th Cir.1988); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987).

### III. DISCUSSION

A. *Sheriff Williams was a final policy-maker regarding reassignments.*

■ A municipality generally is immune from constitutional tort liability unless such liability arises out of the execution of an official policy or custom of the municipality. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A single action by a municipal official possessing final policymaking authority regarding the action in question constitutes the official policy of the municipality, and the determination of whether a municipal official wields final policymaking authority regarding a particular action constitutes a question of state law. *See McMillian v. Monroe Cty.*, 520 U.S. 781, 117 S.Ct. 1734, 1736–37, 138 L.Ed.2d 1 (1997). In determining whether Sheriff Williams was a "policymaker" for Tarrant County, the relevant inquiry "is not whether [he] act[ed] for ... [the county] in some categorical, 'all or nothing' manner." *Id.* at 1737. Rather, a court must "ask whether governmental officials are final policymakers for the local government *in a particular area, or on a particular issue.*" *Id.* (emphasis added).

In *Brady v. Fort Bend County*, the Fifth Circuit noted that Texas law "unequivocally vests the sheriff with final policymaking authority" with respect to filling available employment decisions in the sheriff's department. 145 F.3d 691, 699 (5th Cir. 1998), *cert. denied*, 525 U.S. 1105, 119 S.Ct. 873, 142 L.Ed.2d 774 (1999) (interpreting Tex.Loc. Gov't Code Ann. § 85.003(c)). "[T]he Texas legislature has vested sheriffs with such discretion, and the sheriff's exercise of that discretion is unreviewable by any other official or governmental body in the county." *Id.* at 700. "Thus, at least in those areas in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one 'whose edicts or acts may fairly be said to represent official policy' for which the county may be held responsible under section 1983." *Turner v. Upton Cty.*, 915 F.2d 133, 136 (5th Cir.1990) (quoting *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980)). In *Brady*, the Fifth Circuit rejected the county's argument that, because Texas law authorizes the creation of a civil service commission to review employment decisions, sheriffs do not possess final policymaking authority, stating that no such system existed in Fort Bend County when the sheriff took office.

Unlike the situation in *Brady*, however, the Tarrant County Sheriff's Department has implemented a statutory civil service

commission system pursuant to Texas Local Government Code § 158.035(a).[2] Thus, the Court must look to the rules of the Tarrant County Sheriff's Department Civil Service Commission as they existed in November 1996 to determine whether the establishment of that commission divested the sheriff of final policymaking authority over employee reassignments.

■ The Civil Service Rules ("Rules"), adopted in 1993, as amended and in effect in November 1996, define and regulate the following employment decisions: (1) transfers; (2) reassignments; and (3) demotions. (Appendix to Defendant's Motion for Summary Judgment at 54–55). According to the defendant, the plaintiffs were subjected to a reassignment under section 2.34 of the Rules, which permits the appointing authority to "reassign employees to positions in the same grade and salary within the department in order to maintain efficiency and productivity." *Id.* at p. 55. Section 2.34 further states that "reassignments are not subject to the same rules as transfers...." *Id.* For example, unlike transfers, the appointing authority is not mandated to provide the employee with advance notice of or the reasons for the reassignment. *Id.*

An important distinction between reassignments and the other named employment decisions is that no mention is made in section 2.43 that employees who are subjected to a reassignment are entitled to appeal the decision to the Civil Service Commission. Section 2.41 specifically provides that an employee who is the subject of an involuntary transfer may appeal the decision under the grievance procedure outlined in Chapter VIII of the Rules. *See id.* at 54–55. Similarly, section 2.48 entitles an employee who is involuntarily demoted to a hearing before the Civil Service Commission as outlined in the grievance procedure. *See id.* at 55. Employees who are reassigned are not granted such an entitlement. Indeed, the Court concludes that the language of Chapter VIII precludes employees who are reassigned from using this grievance procedure at all. *See id.* at 70. Section 8.00 of the Rules, entitled "Eligibility to Appeal," states, "Any employee of the Sheriff's Department who has completed his probationary period satisfactorily may file a grievance or appeal when a question of just cause exists in matters of discipline, *involving* termination, reduction in rank or suspension." *Id.* (emphasis added). Because the reassignments of Plaintiffs did not involve termination, reduction in rank, or suspension, Plaintiffs could not rely on the Chapter 8 grievance procedure for relief from the allegedly adverse employment decision. Standing alone, Chapter VIII of the Rules does not divest Sheriff Williams of final policymaking authority regarding reassignments.

The Court further concludes that Plaintiffs similarly had no recourse in the grievance process available before the Conduct Review Commission. Chapter V of the Rules sets forth a Code of Conduct for all covered employees of the sheriff's department. (Def.App. at 56). Section 5.01 contains a general nondiscrimination policy for employees.[3] Section 5.00 states that

---

**2.** This provisions reads:

> The commission shall adopt, publish, and enforce rules regarding:
> (1) selection and classification of employees;
> (2) competitive examinations;
> (3) promotions, seniority, and tenure;
> (4) layoffs and dismissals;
> (5) disciplinary actions;
> (6) grievance procedures;
> (7) the rights of employees during an internal investigation; and
> (8) other matters relating to the selection of employees and the procedural and sub-

stantive rights, advancement, benefits, and working conditions of employees.
Tex.Loc. Gov't Code Ann. § 158.035(a) (West 1999).

**3.** The non-discrimination policy reads:

> 5.01 It is the policy of Tarrant County that employees conduct themselves in an effective manner that avoids any unlawful discrimination on the basis of race, sex, national origin, citizenship, age, religious preference, physical handicap or veterans status, or that causes any violation of civil rights both to other employees and to the general public. Courteous and thoughtful

"the word 'employee' shall use the same definition already outlined in Rule 1.1."[4] The Rules define a regular employee as "[a]n individual occupying a full-time or part-time position of a non-temporary nature." Sec. 2.07. This definition does not specifically include the sheriff, who is separately denoted the "appointing authority" in Section 2.02. The Court concludes that the sheriff is not considered an "employee" of the sheriff's department for purposes of falling within the Code of Conduct of Chapter V of the Rules.[5] Thus, the grievance process set forth in Section 5.12, which applies solely to employees who feel they may have been adversely affected by unfair interpretation or application of the Code of Conduct, was not available to Plaintiffs.

### A. *Reassignments may be sufficiently adverse to be actionable under § 1983.*

■ The defendant asserts that the reassignments of Plaintiffs involved no reduction in rank or decrease in salary, and thus cannot be the basis of an unlawful retaliation claim under § 1983. However, the Fifth Circuit has considered such lateral transfers to be demotions when the new "jobs in the jail are not as interesting or prestigious as jobs in the law enforcement section." *Click v. Copeland,* 970 F.2d 106,

110 (5th Cir.1992); *see also Forsyth v. City of Dallas,* 91 F.3d 769, 774 (5th Cir.1996). Plaintiffs and several of their co-workers have testified that positions in the jail are commonly regarded as holding little prestige, limiting their future employment prospects, and having less desirable hours and job duties than their prior positions in the warrants division. Moreover, Chief Deputy Hank Pope testified in his deposition that "for every law enforcement position you have in the sheriff's office, there's 900 people in the jail that want one of those positions." (Pope deposition at 58). Chief Deputy Pope further testified that requests to transfer into jail assignments are "pretty rare." *Id.* at 59. The Court concludes that a jury might reasonably find that the transfers of the plaintiffs to these positions after having worked at least ten years in the warrants division were sufficiently adverse to construe these employment actions as demotions for purposes of finding municipal liability under § 1983.

### B. *Causal nexus between protected speech and reassignments remains a genuine issue of material fact.*

A plaintiff who claims that a public employer retaliated against him for the exercise of his First Amendment right to free expression bears the burden of proving

---

interpersonal and official relations are supported by this policy.
Def.App. at 56 (emphasis added).

4. The Court notes that there is no Rule 1.1 in the Rules. The Court presumes that this error is a result of the fact that the sheriff's department adopted conduct rules identical to those of the Tarrant County Commissioners' Court and the Tarrant County Civil Service Commission. *See* Def.App. at 56. The current version of the Rules, adopted in 1997, has deleted the reference to Rule 1.1 and simply states that "the word 'employee' shall use the same definition previously outlined." Sec. 5.00. In both versions of the Rules, the word "employee" is defined in Section 2.07.

5. Indeed, the Texas legislature seems to believe that the sheriff is not considered an "employee" of his department. The Local Government Code defines "employee" as "a

person who obtains a position by appointment and who is not authorized by statute to perform governmental functions involving an exercise of discretion in the person's own right...." Tex.Loc. Gov't Code Ann. § 158.001. The sheriff obtains his position by election and certainly is authorized to perform governmental functions involving an exercise of discretion. "In Texas, an elected officer occupies a sphere of authority, which is delegated to that officer by the Constitution and laws, which another officer may not interfere with or usurp." *Abbott v. Pollock,* 946 S.W.2d 513, 517 (Tex.App.1997).

Additionally, Section 158.031 defines "employee" as "an employee of the sheriff's department. The term includes a deputy sheriff." *Id.* at § 158.031. The reasonable interpretation of this provision is that the sheriff himself would not be included in the definition.

"that his conduct was constitutionally protected, and that this conduct was a 'substantial factor'—or, to put it in other words, that it was a 'motivating factor'" in the employer's adverse employment action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (footnote omitted). If the plaintiff carries this burden, the defendant may nonetheless avoid liability if the trier of fact concludes that the defendant has shown by a preponderance of the evidence that it would have reached the same decision ... even in the absence of the protected conduct. *Id.*

■ "[T]here can be no question that ... campaigning for a political candidate ... relate[s] to a matter of public concern." *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir.1995). Because Plaintiffs' conduct clearly was protected by the First Amendment, only the causation inquiry remains. The Fifth Circuit has stated that summary disposition of this causal inquiry is often inappropriate because it normally involves the question of the defendant's motive. *See Click*, 970 F.2d at 113. Plaintiffs have shown (1) that they worked in their previous positions for 10 and 11 years, respectively; (2) that they consistently received above-average performance evaluations before their reassignment;[6] (3) that they were reassigned merely eleven days after the reelection of Sheriff Williams; and (4) that two other deputy sheriffs who also publicly supported Sheriff Williams's opponent were transferred from the warrants division that same day. Plaintiffs also have offered depositions and testimonial evidence of several co-workers who claim that they also have been retaliated against for their political affiliations. Plaintiffs' witnesses

have testified to "common knowledge" within the sheriff's department that reassignment to a correctional position is used as a form of discipline. Additionally, there is a factual dispute as to whether Sheriff Williams asked his staff for a copy of the advertisement in the days before Plaintiffs were transferred. The Court concludes that Plaintiffs have satisfied their burden under the *Mt. Healthy* standard.

In response, the defendant has provided one page of potentially misleading statistical evidence purporting to indicate that Plaintiffs' performance in serving warrants was lacking. *See* Def.App. at 30. Without further explanation, the Court cannot conclude that Plaintiffs' relatively low ranking as to the number of warrants served is significantly different from the majority of their fellow deputies.[7] Moreover, defendant has provided no evidence that Plaintiffs were informed about their alleged poor performance in serving warrants prior to their reassignment. The Court cannot conclude that the defendant has shown that there is no genuine issue remaining as to whether it would have reassigned Plaintiffs in the absence of their protected conduct.

This case contains genuine issues of material fact. Those issues may be resolved only by a jury's assessment of the credibility and testimony of witnesses and of the documentary evidence. Therefore, Defendant's Motion for Summary Judgment is DENIED.

---

**6.** The Court is troubled by Captain John Prince's statement that "it is not unusual in the Sheriff's Department to overrate or overstate the performance of employees in order to make them eligible for much needed pay raises even though actual job performance may be lacking." (Def.App. at 36).

**7.** The Court also is confused by the presentation of these statistical rankings. The defen-

dant does not explain why it provides the numbers for the individual months of August and September 1995, but then compiles all of the numbers for the 12–month period preceding Plaintiffs' reassignment. These statistics as presented do not show that Plaintiffs were consistently at or near the bottom of the list in the months prior to their reassignment.