**FEDERATED MUTUAL INSURANCE COMPANY,**

v.

**GRAPEVINE EXCAVATION, INC., et al.**

**GRAPEVINE EXCAVATION, INC.**

v.

**MARYLAND LLOYDS, A**
Lloyds Insurance Co.

No. 4:96–CV–598–E.

United States District Court,
N.D. Texas,
Fort Worth Division.

May 22, 1998.

John Charles Tollefson, Knox & Tollefson, Dallas, TX, for Federated Mutual Insurance Company, plaintiff.

Patrick Jerome Wielinski, Michelle Illene B. Rieger, Ford, Yungblut, White & Salazar, Dallas, TX, for Grapevine Excavation Inc, defendant.

Michael Patrick Duray, Paul F. Vernon, Vernon & Duray, Dallas, TX, for Employers Mutual Casualty Company, defendant.

John S. Torigian, Krell & Torigian, Houston, TX, for Tribble & Stephens Co., defendant.

R. Brent Cooper, Cooper & Scully, Dallas, TX, for Maryland Lloyds, a Lloyds Insurance Company, third-party defendant.

## MEMORANDUM OPINION AND ORDER

MAHON, District Judge.

Now before the Court are several motions and cross-motions for summary judgment filed by the parties in the above-styled and numbered cause. On May 6, 1998, the Court conducted a hearing on said motions. After a review of the record before the Court, the extensive motions and authorities submitted by the parties, the capable oral presentations at the hearing, and the applicable law, the Court makes the following determination.

### I. OVERVIEW

This is a coverage dispute involving general liability policies provided to Grapevine Excavation, Inc. ("GEI") by Federated Mutual Insurance Company ("FM") and Maryland Lloyds, a Lloyds Insurance Company ("Maryland"). Generally, the parties seek a declaration of the relative rights, duties, and obligations owed pursuant to the subject policies.

### II. BACKGROUND

On August 23, 1996, FM filed this action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57. The basis for jurisdiction is diversity of citizenship pursuant to 28 U.S.C. § 1332. GEI has counterclaimed for a declaration in favor of Defendants.[1]

All Defendants herein have filed Original Answers and, in addition, Defendant GEI filed a Third-party Complaint against Maryland on January 13, 1997. Simply put, the issue before the Court involves the determination of coverage under general liability insurance policies,—specifically: whether FM and/or Maryland has a duty to defend and/or indemnify GEI and Employers Mutual Casualty Company ("EMCASCO"), GEI's performance bond surety, in a state court lawsuit brought by Tribble and Stephens ("T & S") arising out of a parking lot construction project.

The subject parking lot was constructed in part by GEI for Wal–Mart Stores, Inc. ("Wal–Mart") under a general contract between Wal–Mart and T & S. GEI was a subcontractor under the general contract and EMCASCO was GEI's performance bond surety.

T & S's state court petition in the underlying lawsuit (the "T & S lawsuit") generally alleges that FM's named insured, GEI, a foundation subcontractor, and Moore Paving Company ("Moore"), another subcontractor, breached their subcontracts in failing to construct the Wal–Mart parking lot in accordance with contract specifications. It is alleged that GEI failed to lay an appropriate base and/or Moore failed to properly lay asphalt over the base.

In the action before the Court, FM filed its Motion for Summary Judgment on January 28, 1997, seeking a declaration that FM has no duty to defend GEI in the T & S lawsuit nor to pay any judgment or settlement arising out of the claims asserted by T & S in that lawsuit. By motion dated February 28, 1997, GEI responded in opposition to FM's motion and counter-motioned for summary judgment on the issues of FM's duty to defend and coverage under the FM policy for the allegations against GEI in the T & S lawsuit.[2]

---

1. GEI is actively defending this matter. According to the Joint Status Report filed by the parties, the other defendants in this action, Tribble and Stephens and Employers Mutual Casualty Company have stipulated that they are bound by any judgment determining the right and obligations of FM.

2. FM responded in opposition to GEI's motion for summary judgment and both FM and GEI have supplemented their Responses and Replies in this matter until there is a rather lengthy and extensive body of motions before the Court.

Next, on June 16, 1997, GEI filed a Motion for Summary Judgment against Third-party Defendant Maryland claiming that GEI is entitled to coverage under the Maryland policy and that Maryland is obligated to defend GEI against the T & S lawsuit. Maryland filed a responsive motion in opposition to GEI's summary judgment motion.[3] Finally, on March 4, 1998, Maryland filed an amended response which included a cross-motion for summary judgment.

In July 1997, the Court ordered the parties to mediate this case before a mediator designated by the parties. However, the parties' attempt to resolve this dispute through mediation proved unsuccessful. In their Joint Status Report Regarding Mediation filed November 14, 1997 informing the Court of the mediation results, the parties express to the Court their opinion that this Court's rulings on the current motions and cross-motions for summary judgment "may resolve many, if not all, of the issues in this insurance dispute."[4] The Court will now endeavor to resolve the pending summary judgment motions.

### III. SUMMARY JUDGMENT STANDARDS

Summary judgment is proper when the record establishes that no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Hill v. London, Stetelman, & Kirkwood, Inc., 906 F.2d 204, 207 (5th Cir.1990). The evidence in the record is to be viewed in the light most favorable to the nonmoving party. Newell v. Oxford Management Inc., 912 F.2d 793, 795 (5th Cir.), reh'g denied, 918 F.2d 484 (1990); Medlin v. Palmer, 874 F.2d 1085, 1089 (5th Cir.1989).

In order to prevail on a motion for summary judgment, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir.1988); Thibodeaux v. Torch, Inc., 858 F.2d 1048, 1050 (5th Cir.1988); Fed.R.Civ.P. Rule 56(c). The party moving for summary judgment need not produce evidence showing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof. Celotex, 477 U.S. at 325, 106 S.Ct. 2548. Rather, the party moving for summary judgment need only show that the party who bears the burden of proof has adduced no evidence to support an element essential to his case. Celotex, supra; Teply v. Mobil Oil Corp., 859 F.2d 375, 379 (5th Cir.1988). If the movant bears the burden of proof on a claim or defense, he must establish all elements of the claim or defense to prevail on summary judgment. Western Fire Insurance Co. v. Copeland, 651 F.Supp. 1051, 1053 (S.D.Miss.1987), aff'd, 824 F.2d 970 (5th Cir. 1987).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Anderson, 477 U.S. at 257, 106 S.Ct. 2505. In order to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. 1348. Rule 56(e) requires that the nonmoving party "set forth specific facts showing that there is a genuine

---

**3.** GEI had filed a Motion to Strike the Response of Maryland as being untimely filed five days beyond the appropriate filing deadline. However, on July 22, 1997, GEI and Maryland submitted an agreed motion to extend Maryland's time to respond and withdrawing GEI's Motion to Strike.

**4.** FM subsequently supplemented the record in this matter by letter brief dated January 13, 1998 presenting the recent opinion of Gibson & Associates, Inc. v. Home Insurance Company, 966 F.Supp. 468 (N.D.Tex.1997) for the Court's consideration. GEI responded by letter brief dated January 21, 1998. The Court will consider these supplemental submissions by the parties in deciding the present motions.

issue for trial." *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Williams,* 836 F.2d at 961; Fed. R.Civ.P. Rule 56(c). All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion and any doubt must be resolved in his favor. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Meyers v. M/V Eugenio,* 842 F.2d 815, 816 (5th Cir. 1988). However, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson, supra.*

■ In the present case, FM's first point in its summary judgment motion is that "GEI Has the Burden of Proof to Demonstrate Insurance Coverage and That Covered Damages Occurred Within the Term of the Policy." FM's Brief in Support of Motion for Summary Judgment at 4. In sum, FM asserts the following:

> The person seeking coverage under an insurance policy has the duty of proving that he or she is an insured under the policy, that the loss is covered by the policy, that the damages asserted occurred within the policy effective dates and that all policy conditions were met. Only the burden of proving *exclusions* to coverage rests with the insurer. Once exclusions *are* shown to be applicable, the burden is then *again* on the insured to rebut their application or to prove exceptions to the exclusions apply. Before any *exclusions* to coverage are even considered, the persons seeking insurance must *first* prove that the insurance applies *at all* under the coverage.

*Id.* (footnote and citations omitted)(emphasis original). FM asserts that GEI cannot meet its burden of showing coverage under the FM policy.

GEI responds that what FM is attempting to do in the above-cited passage is to "convince the Court that Grapevine must sustain some sort of high burden in order to obtain the defense which Federated owes to it in the Underlying Lawsuit." GEI Response and Cross-Motion for Summary Judgment at 7. Instead, GEI asserts, an insured need only meet a relatively low burden in order to obtain a defense from a general liability carrier. *Id.* In its brief, GEI states the following correct principles of law:

> The insurer's duty to indemnify, the duty addressed in most of the cases cited by Federated, is not as broad as its duty to defend. *Colony Ins. Co. v. H.R.K., Inc.,* 728 S.W.2d 848, 850 (Tex.App.—Dallas 1987, no writ). The obligation to defend the Underlying Lawsuit is determined solely from the allegations in the third party claimant's petition without reference to the truth or falsity of the allegations or to what the parties either believe or know the true facts to be. *American Physicians Ins. Exchange v. Garcia,* 876 S.W.2d 842, 847–848 (Tex.1994). In essence, the allegations in the complaint are compared to the provisions of the policy and this comparison is referred to as the "complaint allegation rule" or the "eight corners" rule. *American Alliance Ins. Co. v. Frito–Lay, Inc.,* 788 S.W.2d 152, 153 (Tex.App.—Dallas 1990, writ dism'd).

An insurer bears the duty to defend where the Underlying Lawsuit contains allegations that, if taken as true, even *potentially* state a cause of action within the coverage of the policy. *Houston Petroleum Co. v. Highlands Ins. Co.,* 830 S.W.2d 153, 155 (Tex.App.—Houston [1st Dist.] 1990, writ denied). For purposes of determining the duty to defend, the Court must focus on the facts which show the origin of the damages and not the legal theories asserted by the third party for recovery. *Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.,* 852 S.W.2d 252, 255 (Tex.App.—Dallas 1993, denied with per curium opinion), 889 S.W.2d 266 (Tex.1994). Where an ambiguity in the allegations against the insured exists, the eight-corners rule requires that the court give the petition the most liberal reading possible, resolving all legitimate doubts in favor of coverage. *Lafarge Corp. v. Hart-*

*ford Casualty Co., Inc.*, 61 F.3d 389 (5th Cir.1995).

*Id.* at 7–8 (emphasis original).

In reply, FM cites the Court and GEI to the Fifth Circuit case of *Canutillo Independent School Dist. v. Nat. Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir.1996) which states:

> Although the insured bears the burden of showing that the claim against it is potentially within the policy's coverage, *Sentry Ins. v. R.J. Weber*, 2 F.3d 554, 556 (5th Cir.1993), the insurer bears the burden of establishing that an exclusion in the policy constitutes an avoidance of or affirmative defense to coverage.

FM claims that GEI cannot meet its burden of proving coverage provisions apply, such as property damage, trigger, etc., before exclusions are considered. FM's Reply at 5.

Recently, the Fifth Circuit set forth the following analysis relevant to the coverage disputes before this Court:

> Under Texas law, an insurer's duty to defend is triggered where the allegations in the plaintiff's pleadings raise a potential for coverage under the policy. *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973). An insurer bears the burden of proving that the allegations contained in the underlying plaintiff's petition are excluded from coverage and any doubt is resolved in favor of the insured. *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673 (Tex.App.—Houston [14 Dist.] 1993, writ denied), *cert. denied*, 511 U.S. 1053, 114 S.Ct. 1613, 128 L.Ed.2d 340 (1994). This burden includes proving that none of the claims asserted potentially fall within coverage. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex.1965). The duty to defend is determined by examining the latest amended pleading upon which the insurer based its refusal to defend the action. *Rhodes v. Chicago Insurance Co.*, 719 F.2d 116, 120 (5th Cir.1983).

*Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 84 (5th Cir.1997).

■ Moreover, under Texas law, an insurer's contractual duty to defend must be determined solely from the face of the pleadings, without reference to any facts outside the pleadings. *Continental Sav. Ass'n v. U.S. Fidelity and Guar. Co.*, 762 F.2d 1239, 1243 (5th Cir.), *amended in part, rehearing denied*, 768 F.2d 89 (1985). This duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy. Id. Whether the policy covers the cause of action alleged must be determined from the contractual terms of the insurance policy. *Whatley v. City of Dallas*, 758 S.W.2d 301, 304 (Tex.App.—Dallas 1988, writ denied). If under the facts alleged, there is a prima facie showing that the claim is not covered under the policy, the insurer has no duty to defend. *Holmes v. Employers Casualty Co.*, 699 S.W.2d 339, 340–41 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). It is well established Texas law that insurance policies are to be strictly construed in favor of the insured in order to avoid exclusion of coverage. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984).

In the present case, the Court notes that the parties have moved for summary judgment on the same basic coverage and exclusion issues. Therefore, in effect, the parties agree that there are no genuine issues of material fact regarding coverage;[5] they just disagree over the resulting legal construction which the Court should apply to the policies' terms, conditions, and provisions with regard to FM's and/or Maryland's duties to defend and/or indemnify GEI in the T & S lawsuit. In this regard, each side, as movants for summary judgment, have the burden of establishing the absence of any genuine issue of material fact on the issues presented to the Court upon which that party relies.

However, noting the apparent conflict between the Fifth Circuit cases of *Cornhill* and *Canutillo*, the Court determines to apply the standard recently enunciated by the *Cornhill*

---

**5.** In fact, all parties stipulated that there are no factual matters in dispute at the May 6, 1998 hearing on the summary judgment motions.

Court. Therefore, FM and Maryland (the insurers) have the burden of proving that the allegations contained in the T & S petition do not potentially fall within coverage and/or that contract exclusions apply and any doubt is resolved in favor of GEI (the insured). *Cornhill,* 106 F.3d. at 84; *Adamo,* 853 S.W.2d at 676.

Finally, FM and Maryland correctly maintain that if there is no duty to defend, then they are not obligated to pay any judgment or settlement of the T & S lawsuit.[6] *See Western Heritage Ins. Co. v. River Entertainment,* 998 F.2d 311, 315 (5th Cir.1993)(applying Texas law). Therefore, the Court will first endeavor to determine whether FM and/or Maryland have any duty to defend GEI in the underlying T & S lawsuit.

## IV. *ALLEGED BASES FOR SUMMARY JUDGMENT*

The following summary judgment motions are now pending before the Court: (1) FM's Motion for Summary Judgment against GEI; (2) GEI's cross-motion for summary judgment against FM; (3) GEI's motion for summary judgment against Maryland; and (4) Maryland's cross-motion for summary judgment against GEI. As will become readily apparent, the motions before the Court raise four basic issues: (1) whether "property damage" is alleged in the T & S lawsuit; (2) whether "trigger" has occurred; (3) whether an "occurrence" is alleged in the T & S lawsuit; and (4) whether contract exclusions apply.

FM presents the following bases for summary judgment against GEI: (1) there is no "property damage" alleged in the T & S lawsuit as required by the FM policy; (2) the "damages" alleged in the T & S lawsuit did not occur during FM's policy effective dates (no trigger); and (3) there is no "occurrence" alleged in the T & S lawsuit as required by the FM policy.[7]

GEI's cross-motion for summary judgment against FM presents the following bases for judgment as a matter of law: (1) the allegations in the T & S lawsuit trigger FM's. duty to defend GEI; (2) GEI's work caused "property damage" to the Wal–Mart parking lot as that term is defined in the FM policy; and (3) the "property damage" was caused by an "occurrence" as defined in the FM policy.

In addition, GEI asserts the following bases for summary judgment against Maryland: (1) the allegations in the T & S lawsuit trigger Maryland's duty to defend GEI; (2) GEI's work caused "property damage" to the Wal–Mart parking lot as that term is defined in the Maryland policy; (3) the "property damage" was caused by "an occurrence" as defined in the Maryland policy; (4) no exclusion in the Maryland policy applies to deny coverage; and (5) Maryland breached the policy by refusing to defend GEI.

Finally, Maryland asserts the following bases for summary judgment against GEI: (1) the allegations in the T & S lawsuit do not trigger Maryland's duty to defend GEI; (2) the damage to the parking lot as alleged in the T & S lawsuit was not caused by an "occurrence" as defined in the Maryland policy; (3) Maryland's policy contains several exclusions applicable to preclude the duty to defend GEI in the T & S lawsuit; and (4) Maryland did not breach its insurance contract by denying defense to GEI because Maryland has no duty to defend.

## V. *ANALYSIS*

For clarity, the Court will consider each issue presented for summary judgment separately and in relation to the party or parties which have raised them. Thus, the Court will analyze the issues of (1) property damage; (2) trigger; (3) occurrence; and, if necessary, (4) exclusions, as those terms and issues are defined in the law and in the subject policies.

---

6. FM also points out that in the event that the Court finds that FM owes GEI a duty to defend, the issue of FM's duty to pay should be reserved until after the resolution of the underlying T & S lawsuit. GEI does not take issue with FM's position in this regard.

7. Although FM did not expressly move for summary judgment based upon contract exclusions in its written motions, at the May 6, 1998 hearing, it did join Maryland's motion regarding the exclusions issues.

The following verbatim undisputed factual chronology was provided to the Court at the May 6, 1998 hearing in the form of a joint exhibit which the Court admitted into evidence:

### CHRONOLOGY

1. Work begun in September 1994

—Subcontract with Grapevine entered on 9/20/94

2. Grapevine's work done from September 1994 to late February 1995

—Releases for work signed each month—last one for work through 2/27/95 (signed April 1995)

3. Moore began paving in March 1995

4. Problems with Moore's work reported on 5/5/95

5. Completion of work unclear

—Certificate of Occupancy issued by City on May 24, 1995

6. Problems with fill discovered in August 1995 (as per Petition)

FEDERATED POLICY: January 1, 1994 to January 1, 1995

MARYLAND POLICY: January 1, 1995 to January 1, 1996

May 6, 1998 Hearing, Joint Exhibit for MSJ (all parties). The Court will now consider the summary judgment issues.

### A. *Property Damage*[8]

FM and GEI agree that in order for there to be coverage under the FM policy, there must be "property damage" as defined therein. The FM policy defines "property damage" as follows:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss

shall be deemed to occur at the time of the "occurrence" that caused it.

FM alleges that the underlying T & S petition does not allege physical injury or loss of use of the parking lot. Instead, FM asserts, all that is alleged is that the parking lot was not up to contract specifications and is in need of an overlay to bring the lot up to specifications.

GEI counters that T & S's First Amended Original Petition, in addition to the latest amendments contained in T & S's Fourth Amended Original Petition, include allegations of actual property damage. Specifically, GEI points to T & S's First Amended Original Petition which states that the condition of the parking lot is "unacceptable" and that GEI is responsible, in whole or in part, for the "failure" of the lot paving. *See,* T & S's First Amended Original Petition, FM Motion for Summary Judgment, Ex. 1, ¶¶ III.7 and IV.A.1. Additionally, GEI directs the Court's attention to T & S's Fourth Amended Original Petition [9] filed February 13, 1997, which includes allegations that GEI's failure to install the correct select fill "negligently damaged the work" of the paving contractor, Moore. *See,* T & S's Fourth Amended Original Petition, GEI Response and Cross–Motion for Summary Judgment, Ex. B, ¶ III.6. GEI summarizes its position as follows:

> The mere fact that this case involves allegations of defective workmanship against Grapevine, the insured, does not rule out comprehensive general liability insurance coverage for the damaged [sic] caused to the work of others such as Moore Construction or Tribble & Stephens.

GEI Response and Cross–Motion for Summary Judgment at 15.

FM attacks T & S's Fourth Amended Original Petition as being "obviously 'made to order' in an effort to attempt to 'plead the case within coverage'." In this way, FM alleges that the T & S Fourth Amended Original Petition was filed "just a few" days

---

8. This issue is raised between FM and GEI only, Maryland has not moved for summary judgment on this issue. In fact, Maryland has conceded that property damage has been alleged in the underlying T & S lawsuit with regard to Maryland.

9. There has been no mention of or reference to the T & S Second or Third Amended Petitions, nor have such petitions been placed in the record before the Court.

prior to the date GEI's response in the present case was due. FM urges this Court to disregard the allegations in the Fourth Amended Original Petition and the attachments thereto and, in the alternative, argues that the amendment does not affect FM's position regarding a lack of "property damage" allegations sufficient to invoke coverage under the FM policy.

The parties have cited the Court to numerous cases dealing with the issue of "property damage" in the context of general liability contracts. After considering the law on the issue, the Court determines that T & S has not alleged acts by GEI which, if taken as true, potentially fall within the "property damage" definition under the FM policy. In the First Amended Original Petition in the T & S lawsuit, T & S complains generally of GEI's faulty work on the parking lot and seeks to hold GEI "responsible" for the parking lot failure. There are no specific allegations of "physical injury to tangible property" or "loss of use of tangible property."

While the Court agrees with FM that the latest amendment in the T & S lawsuit, the Fourth Amended Original Petition, appears to have been tailored to specifically address the "property damage" issue raised by FM in its Motion for Summary Judgment, the Court finds other problems with the allegations of "property damage" therein. Prior to FM's filing its Motion for Summary Judgment, there were absolutely no allegations by T & S that GEI's faulty workmanship caused physical injury to any tangible property, including the work of others. Yet, less than one week before the deadline under which GEI was required to file its response to the FM summary judgment motion, T & S amended its state court petition to include exactly those allegations. However, while the latest T & S amended petition does allege that GEI caused property damage to the work done by the other paving subcontractor, Moore, the Court finds these allegations insufficient to invoke coverage under the FM policy.

As established by the record and illuminated at the hearing, GEI provided the lowest level, or subbase, of the parking lot while Moore provided the next level, the flex base,

and the top level, the asphalt cover. Indisputably, Moore did not even begin its work on the parking lot until March 1995, approximately two months or so beyond the time which FM's policy expired by its own terms. Therefore, as a matter of law, FM has no duty to defend alleged "property damage" to Moore's work which could not have even possibly occurred during the FM policy period.

Undeterred, GEI argues that FM should still have to defend it because the alleged "property damage" occurred in the form of diminution in value of the parking lot at the time GEI performed its subbase work. In this regard, GEI principally relies on *Hartford Casualty Co. v. Cruse*, 938 F.2d 601 (5th Cir.1991). However, the Court is unpersuaded by GEI's argument. In *Cruse*, homeowners filed an action for breach of warranties, negligence, and violation of the Texas Deceptive Trade Practices Act against a contractor who performed defective foundation leveling service on their home. *Id.* 938 F.2d at 602. The homeowners' lawsuit claimed damages for correcting the defective foundation leveling, for diminution in the market value of the house after repairs, for mental anguish, and for damages to various other parts of the house (i.e., doors out of plumb, unlevel surfaces of window sills and counter tops, cracking in walls and floors). *Id.*

The *Cruse* case is distinguishable from the present case in a couple of respects. In *Cruse*, there were clear allegations of property damage to other parts of the house resulting from the alleged defective leveling services. As stated previously herein, the T & S lawsuit does not allege this type of property damage which could have occurred during the FM policy. Moreover, in the present case, the T & S lawsuit does not allege diminution in value as a result of GEI's alleged defective work during the FM policy period.

Simply put, even taking the T & S lawsuit allegations as true and resolving all doubt in favor of coverage, the allegations therein do not and could not support a finding of "property damage" under the terms and during the period covered by the FM policy. The Court finds it an unjustifiable stretch to hold

otherwise. Thus, FM has no duty to defend GEI in the T & S lawsuit because there are no allegations of "property damage" as defined in the FM policy sufficient to invoke policy coverage.

### B. Policy Trigger (Damage Manifestation)[10]

█ Trigger refers to whether a loss falls within a policy's effective term. The FM policy (as with most such standard commercial general liability policies, including Maryland's) covers only property damage that "occurs during the policy period." Indisputably, FM's policy covered from January 1, 1994 to January 1, 1995 and Maryland's policy covered from January 1, 1995 to January 1, 1996.

FM argues that since any alleged property damage (which FM, of course, disputes is present in the T & S lawsuit allegations) did not and could not have manifested during the FM policy period, FM has no duty to defend GEI as a matter of law. GEI argues that it did the work from November 1994 through February 1995 and that the damage occurred at the time the work was done so that both FM's and Maryland's policies are triggered.

The law of "trigger" in Texas is concisely set forth in *Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538, 544 (5th Cir.1992) as follows:

> Texas courts have concluded that the time of occurrence is when a claimant sustains actual damage—not necessarily when the act or omission causing that damage is committed. *See, e.g., Dorchester Dev. Corp. v. Safeco Ins.*, 737 S.W.2d 380, 383 (Tex.App.—Dallas 1987, no writ).

In *Dorchester*, one of the issues before the Court was "whether there is coverage for property damage resulting from workmanship performed during the policy period when the property damage is not manifested until after the policy period." 737 S.W.2d at 383. The Court held that "no liability exists on the part of the insurer unless the property damage manifests itself, or becomes apparent, during the policy period." *Id.*

FM's "no trigger" argument is a corollary to, and alternative prong of, the "no property" damage issue raised by FM previously herein. In effect, FM argues that "even if there were 'property damage,' it did not occur within FM's policy effective dates." FM's Motion for Summary Judgment at 17. FM's argument is that the T & S lawsuit alleges that the problems with the parking lot did not become apparent until August 1995, therefore such damage did not "trigger" during the FM policy period of January 1, 1994 to January 1, 1995. It is undisputed that the alleged problems with the parking lot were not discovered until August 1995. In this way, the Court concludes that the alleged damages did not "manifest, or become apparent," during FM's policy period which ended January 1, 1995.

█ Again, GEI attempts to argue that the alleged "property damage" occurred in the form of diminution in value of the parking lot at the time GEI performed its subbase work. GEI Response and Counter-Motion for Summary Judgment at 17 (citing *Hartford Casualty Co. v. Cruse, supra*). However, as stated previously herein, the Court finds GEI's reliance on *Cruse* misplaced. Moreover, GEI's citation of cases from other jurisdictions regarding diminution in value as property damage notwithstanding, the Court finds that pursuant to Fifth Circuit and Texas law, as embodied in *Snug Harbor* and *Dorchester, supra*, the time of manifestation of the alleged damages is key and, in the present case, the damages alleged to have resulted from GEI's defective work did not and could not have manifested during FM's policy period.

Moreover, the Court has considered GEI's argument that a "continuous trigger" should apply such that all policies in effect from the date of installation of the defective work through manifestation apply. GEI Reply to FM Response to GEI Motion for Summary Judgment at 13 (citing *Dayton Indep. School Dist. v. National Gypsum Co.*, 682 F.Supp. 1403 (E.D.Tex.1988)) (asbestos damage to school property held to have caused damage from time of installation through time of

---

**10.** Again, this issue is raised between FM and GEI only, Maryland has not moved for summary

judgment on the basis that the alleged damages did not occur during the Maryland policy period.

removal and triggered all liability policies involved). However, *Dayton*'s persuasive value in the "property damage" context is questionable in light of *W.R. Grace & Co. v. Continental Cas. Co.*, 896 F.2d 865, 876 (5th Cir.1990) wherein the Court reversed the *Dayton* decision, albeit on other grounds. As pertinent to the case and issues before this Court, the *Grace* Court stated:

> New York and Texas appear to disagree with respect to the trigger of coverage. Grace cites *National Standard Ins. Co. v. Continental Ins. Co.*, No. CA–3–81–1015–D (N.D.Tex. Oct.4, 1983), for the proposition that Texas applies a "continuous trigger," at least for the duty to defend certain bodily injury claims. *There appears to be no Texas case applying either the injury-in-fact standard or a continuous trigger to the duty to indemnify in property damage cases.*

896 F.2d at 876 (emphasis added). Of course, the *Dayton* opinion predates *Snug Harbor* and while at first blush GEI's argument appears to have some merit, the Court finds that the manifestation standard for trigger as enunciated in *Snug Harbor* and *Dorchester* is the appropriate mechanism for determining whether the alleged property damage occurred during the policy period. To adopt the "continuous trigger" theory in the present case would render the requirement that such property damage "occur during the policy period" meaningless. Therefore, in addition to the "no property damage" basis set forth previously, the Court finds that FM likewise does not have a duty to defend GEI in the T & S lawsuit on the basis that the alleged damages did not occur during FM's policy period such that coverage would be triggered.

### C.  *Occurrence*[11]

■  "Occurrence" is defined in the FM and Maryland policies as follows:

> "Occurrence" means an accident including continuous or repeated exposure to sub-

stantially the same general harmful conditions.

FM and Maryland each assert that the actions by GEI as alleged in the T & S lawsuit do not meet the definition of occurrence as set forth in the policies. More to the point, the insurers argue that GEI's alleged actions in performing faulty workmanship cannot be characterized as an "accident" but rather as voluntary and intentional and causing injury which was the natural result of not meeting contract specifications.

On the other hand, GEI argues that under Texas law "the focus is not upon whether the act giving rise to the damage, i.e., breach of contract, is intentional, but whether the damage itself is intentional." GEI Response and Cross–Motion for Summary Judgment at 10. GEI asserts that:

> There has been no allegation that Grapevine graded the subgrade for the pavement of the parking lot intentionally so as to cause the property damage which is alleged to have occurred. While its alleged defective workmanship may have breached its contract, it is still an accident and under no stretch of the imagination did Grapevine expect or intend any property damage to occur.

*Id.* at 12. Thus, argues GEI, there has been an occurrence alleged in the T & S lawsuit as that term is defined in the subject policies.

The seminal Texas case on the issue of "occurrence" in general liability policies, and the one principally relied upon by FM and Maryland, is *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633 (Tex.1973). In *Maupin*, an insured contracted with the State of Texas to make certain improvements to a state highway. The contract required Maupin to obtain and furnish borrow materials for roadway fills. Maupin contracted with an individual, Kipper, to purchase and remove the borrow material from property occupied by Kipper. After the borrow material was removed, it was determined that

---

**11.**  Both FM and Maryland have moved for summary judgment on the issue of whether there has been an occurrence alleged in the T & S lawsuit. Of course, GEI has cross-motioned for summary judgment on this issue as well. Although the Court has determined that FM is entitled to sum-

mary judgment on the "no property damage" and "no trigger" issues, nonetheless the Court will consider FM's alternative argument that no occurrence has been alleged such that there is no duty to defend GEI in the T & S lawsuit.

Kipper was not the owner of the property but merely a tenant in possession. The true owners of the property brought suit against Maupin for trespass.

Maupin requested Argonaut, its insurance carrier, to defend him in the lawsuit with the true owners of the property. The subject policy contained the following definition of an occurrence:

> The word "occurrence" as used herein shall mean either (a) an accident, or (b) in the absence of an accident, a condition for which the insured is responsible which during the policy period causes physical injury to or destruction of property which was not intended.

*Id.* 500 S.W.2d at 634, fn. 1. Maupin argued, and the court of civil appeals agreed, that the removal of the borrow material from the property was an occurrence or accidental damage or injury to the property of another as covered by the policy. The Texas Supreme Court disagreed holding as follows:

> The removal of over 5000 cubic yards of borrow material from the Meyer's property by respondents was intentional and deliberate. Although it may be argued respondents had no intent to injure the Meyers, the removal of the material from the property was done under the authority of the contract with Kipper. The fact damage would occur to the Meyers is not material. The respondents relied upon their own investigation and contract with Kipper to form the basis for the removal of the borrow material. Damage complained of here was the removal of the large amount of material from the property. Respondents did exactly what they intended to do. The fact that they did not deal originally with the owners of the property was the mistake or error. There was no insurance against liability for damages caused by mistake or error. The plaintiff's act in trespassing upon the Meyers' property did not constitute an accident. They did what they intended to do by removing the borrow material from the property. The fact that they were unaware of the true owner of the property has no bearing upon whether the trespass was caused by accident. The respondent's

acts were voluntary and intentional, even though the result or injury may have been unexpected, unforeseen, and unintended. We conclude there was no coverage under the policy for damages caused by mistake or error as to the ownership of the property in question. The damage was not an accident or occurrence within the meaning of this policy.

*Id.* 500 S.W.2d at 635. The *Maupin* Court cited with approval the following language from *Thomason v. U.S. Fidelity & Guaranty Co.*, 248 F.2d 417 (5th Cir.1957):

> Where acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident even though that result may have been unexpected, unforeseen and unintended. There was no insurance against liability for damages caused by mistake or error. The cause of the injury was not an accident within the meaning of this policy.

*Maupin,* 500 S.W.2d at 635.

Another Texas case cited to the Court by FM and Maryland is *Baldwin v. Aetna Casualty and Surety Co.*, 750 S.W.2d 919 (Tex. App.—Amarillo 1988, writ denied). In *Baldwin,* Baldwin owned a trucking service and was advised that the State of Texas was going to sue him for allegedly causing damages to state highways by repeated violations of a state statute regulating vehicle size and weight limits. Aetna refused to defend Baldwin under the subject insurance policy. Thereafter, Baldwin settled with Texas in which he paid over $70,000 and sought indemnification from Aetna. Aetna refused and in the subsequent lawsuit contended that the State's claim was based on willful misconduct and was not covered by the policy.

In analyzing Aetna's motion for summary judgment on the issue of Aetna's alleged duty to defend Baldwin, the Court stated as follows:

> Our ultimate inquiry, then, is whether Aetna conclusively proved that the claim made by the State was not covered by the policy. To resolve that question, we examine the petition that would have been filed against Baldwin if he had not settled, because the petition is, for this case, the claim that was

made. The first, and primary, allegation is that Baldwin placed his trucks on Texas highways "knowing" they were overweight in violation of article 6701d–11. Damages were then alleged "as a direct result of this Defendant's deliberate overloading said trucks."

*Baldwin*, 750 S.W.2d at 921. The State alleged that Baldwin's actions created a "nuisance per se and public nuisance" and characterized Baldwin's actions as flagrant and intentional. *Id.* In opposition to Aetna's argument, Baldwin argued that nuisance can be based upon negligent acts and that he specifically denied in his sworn affidavit ever "knowingly" overloaded his trucks. The Court, however, rejected Baldwin's assertions finding that *Maupin, supra,* and *Winn v. Continental Casualty Co.,* 494 S.W.2d 601 (Tex.Civ.App.—Tyler 1973, no writ) "make it clear that the intent of the insured is immaterial." *Id.*

On the other hand, in support of its argument that an occurrence is alleged in the T & S lawsuit, GEI points the Court to the following cases: *Cruse, supra; Travelers Ins. Co. v. Volentine,* 578 S.W.2d 501 (Tex.Civ.App.—Texarkana 1979, no writ); *Lafarge v. Hartford Cas. Ins. Co.,* 61 F.3d 389 (5th Cir.1995); and *Employers Cas. Co. v. Brown–McKee, Inc.,* 430 S.W.2d 21 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.). However, the Court is unpersuaded that these cases control the decision in the present case. Instead, after a full review of the cases cited to this Court by all parties, the Court makes the following determination.

Initially, the Court notes that there are cases, both in Texas and in Fifth Circuit precedent, which seem to blur the line of whether defective performance of a construction contract constitutes an "occurrence." For example, *Cruse* and *Volentine* appear to support the proposition, asserted by GEI, that the allegations in the T & S lawsuit should be considered an accident or occurrence. On the other hand, *Maupin, supra; Baldwin, supra; Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 40 Tex.Sup.Ct.J. 583 (Tex.1997); *State Farm Fire & Casualty v. S.S.,* 858 S.W.2d 374 (Tex.1993); and *Gibson & Assoc. v. Home Ins. Co.,* 966 F.Supp.

468 (N.D.Tex.1997) seem to support FM and Maryland's position that no occurrence is alleged in the T & S lawsuit.

█ The Court is particularly persuaded by the following statement by the *Cruse* Court regarding allocation of risk in these types of cases:

> Considered in tandem with the business risk exclusion, the "occurrence" requirement illuminates the allocation of risk. Direct (as opposed to consequential) damages that naturally follow from a breach of contract are conclusively presumed to have been in the contemplation of the parties and may therefore constitute expected or intended damages. *A comprehensive general liability policy does not cover this cost of doing business. A builder who fails to abide by the specifications of a contract, for example by substituting a weaker building material, may by that breach produce·expected property damage to his or her work, and may thus fail to show a covered "occurrence."*

938 F.2d at 604–605 (emphasis added). Although the *Cruse* Court went on to hold that "[w]ith the extensive damage to the Cruses' home, we find an occurrence sufficient to trigger coverage," this Court is not so inclined in the present case.

The allegations in the T & S lawsuit, specifically—in the Fourth Amended Original Petition, allege that the work to be performed by GEI "was to be completed in strict accordance with the plans and specifications" of the subcontract with T & S attached to the petition. *See,* T & S's Fourth Amended Original Petition, GEI Response and Cross–Motion for Summary Judgment, Ex. B, ¶ III.2. It is further alleged that "[i]n August 1995, it was discovered that the select fill materials provided and installed on the Project by Grapevine failed to meet the Owner's specifications for the Project." *Id.* at ¶ III.4. Specifically, it is alleged that the materials furnished and installed by GEI had a California Bearing Ratio ("CBR") in the range of 3.7 to 4.9, far below the 15 CBR specified in the subcontract. *Id.*

Although the Fourth Amended Original Petition filed by T & S does, for the first

time in that lawsuit, attempt to couch the actions of GEI in terms of negligence in damaging Moore's work, the Court finds that essentially GEI's actions in failing to meet the contract specifications are "the natural and probable consequence" of its conduct in allegedly breaching its contract by failing to meet the contract specifications. The following analogy in a recent Fifth Circuit cases is illustrative:

> At oral argument, Meridian attempted to demonstrate that damage to the Marshall property was accidental by equating itself with one who intentionally goes over the speed limit and subsequently is involved in an unexpected collision; coverage would still exist. Although we agree with that scenario, Meridian's actions are closer to those of a reckless driver who careens down a busy street while blindfolded and later claims he had "good intentions" but didn't see the stop signs; the resulting damages cannot be characterized as "unexpected."

*Meridian Oil Production Co. v. Hartford Acc. & Indem. Co.*, 27 F.3d 150 (5th Cir. 1994). In sum, the Court finds that the T & S lawsuit alleges actions by GEI which, in essence, constitute an alleged breach of contract which produced damages which cannot be characterized as unexpected or unintended in light of GEI's alleged failure to meet the contract specifications as alleged in the T & S lawsuit.[12] There is no "occurrence" alleged in the T & S lawsuit as that term is defined in the FM and Maryland general liability policies.

## CONCLUSION

For the foregoing reasons, the Court concludes that the T & S lawsuit does not allege facts which potentially fall within coverage of the commercial general liability policies issued to GEI by FM and Maryland. Specifically, the Court finds that there are no alle-

gations of "property damage" which could have occurred during the FM policy coverage period. Therefore, as a matter of law, FM has no duty to defend GEI in the T & S lawsuit on those bases.

Moreover, the Court further finds that there are no allegations of an "occurrence" in the T & S lawsuit sufficient to invoke coverage under either the FM and/or the Maryland general liability policies. Accordingly, neither FM and/or Maryland have any duty to defend GEI in the T & S lawsuit on this basis. Because the Court concludes that no coverage has been invoked by the allegations in the T & S lawsuit, there is no need to address the parties' assertions regarding any alleged exclusions to coverage under the policies.

The Court finds that FM and Maryland are entitled to judgment as a matter of law that each have no duty to defend for any claims asserted against GEI in the T & S lawsuit under the relative policies provided to GEI. Moreover, since neither FM nor Maryland have any duty to defend GEI in the T & S lawsuit, neither FM nor Maryland have any duty to indemnify GEI for any judgment or settlement arising out of the T & S lawsuit.

It is therefore ORDERED that FM's Motion for Summary Judgment against GEI filed January 28, 1997 is hereby GRANTED.

It is further ORDERED that GEI's Cross–Motion for Summary Judgment against FM filed February 18, 1997 is hereby DENIED.

It is further ORDERED that GEI's Motion for Summary Judgment against Maryland filed June 16, 1997 is hereby DENIED.

It is further ORDERED that Maryland's Cross–Motion for Summary Judgment against GEI filed March 4, 1998 is hereby GRANTED.

---

**12.** Further, the Court is of the opinion that the claims asserted against GEI in the T & S lawsuit are more properly characterized as being covered by a performance bond surety rather than a general liability policy. While GEI (and, in effect, T & S) have attempted to make the square peg of defective contract performance fit into the round hole of liability for damage to property of others, the Court concludes that such is not the

proper result in the present case. As stated by FM in its Motion for Summary Judgment, "A general liability policy is not a guarantee of the insured's quality of work nor is it a performance bond. GEI had a performance bond. FM's policy should not be tortured so as to vouchsafe GEI's failure to comply with its contracts." FM *Motion for Summary Judgment* at 21.

It is further ORDERED that FM and Maryland have twenty (20) days from the date of this Order to submit to the Court any motion for costs and attorneys' fees pursuant to Federal Rule of Civil Procedure 54.

An appropriate Judgment shall be entered herewith.