HARTFORD CASUALTY COMPANY,
Plaintiff–Appellee,

v.

Aubrey R. CRUSE, III, et al.,
Defendants–Appellants.

No. 90–2888.

United States Court of Appeals,
Fifth Circuit.

Aug. 14, 1991.
Rehearing Denied Sept. 23, 1991.

Mark A. McLean, Steve A. Bryant, Bryant & McLean, Houston, Tex., for defendants-appellants.

Richard Paul Colquitt, Fulbright & Jaworski, Houston, Tex., for plaintiff-appellee.

Before REAVLEY, HIGGINBOTHAM and DUHÉ, Circuit Judges.

REAVLEY, Circuit Judge:

On an insurer's summary judgment motion, the district court held that a liability policy excluded coverage for damages related to defective foundation work on a house. We reverse and remand.

## BACKGROUND

James W. Lashley d/b/a J. & J. House Leveling ("J & J") defectively performed foundation leveling services on the home of Aubrey and Judy Cruse. The Cruses sued J & J in state court for breach of warranties, negligence, and violation of the Texas Deceptive Trade Practices Act. The suit claimed damages for correcting the defective foundation leveling, for diminution of the house's market value after repairs, for mental anguish, and for damages to various other parts of the house.[1]

Hartford Casualty Insurance Company had issued a comprehensive general liability policy to J & J, but claimed that the policy did not cover the Cruses' damages and thus refused to defend J & J. J & J declared bankruptcy during the pendency of the state suit. The bankruptcy court issued a limited lift of the bankruptcy stay so that the Cruses could proceed to collect any insurance recovery due J & J. Without appearance by J & J, the Cruses secured a judgment against J & J and agreed not to execute against J & J in exchange for J & J's assignment of all its rights against Hartford.

Hartford filed this suit for declaratory judgment that it has no obligation with respect to the state court judgment, or alternatively that its obligation only extends to that portion of the claim that is within its policy's coverage. The Cruses answered the complaint and counterclaimed seeking recovery from Hartford of the full amount of the state court judgment against J & J. Both parties filed motions for summary judgment.

The district court held that the damages of which the Cruses complained were due

---

1. This damage included doors out of plumb, surfaces such as window sills and counter tops abnormally out of level, separation of interior walls from the floor, and cracked sheetrock.

to J & J's "faulty workmanship," and that two exclusions denied coverage for faulty workmanship. The court held further that the Cruses failed to show any damage caused by an "occurrence" as required by the policy, and granted Hartford's motion for summary judgment. The Cruses appeal.

## DISCUSSION

The district court erred in extending the exclusion for faulty workmanship to all of the Cruses' claimed damages, in assuming that J & J had care, custody, or control of all property damaged by the faulty foundation work, and in failing to acknowledge an "occurrence" within the meaning of the liability policy. J & J's comprehensive general liability policy covers at least some of the damages claimed by the Cruses, and Hartford therefore breached its duty to defend J & J. Hartford must therefore pay the state court judgment amount, plus costs of enforcing the judgment, less the amount of the judgment specifically attributable to damages not covered by the policy. The underlying judgment does not itemize the recovery, and we thus remand for further proceedings.[2]

1. Exclusion (o)—the "Injury to Work" Exclusion

Hartford's comprehensive general liability policy does not cover "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

■ A comprehensive general liability policy with this "business risk" exclusion provides protection "for personal injury or for property damage caused by the completed product but not for the replacement and repair of that product. The justification for treating these risks differently is that the insured can control the quality of the goods and services he supplies, while accidental injury to property or persons exposes him to almost limitless liability." *T.C. Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.*, 784 S.W.2d 692, 694–95 (Tex.App.—Houston [14th Dist.] 1989, writ denied) (citations omitted). Thus a contractor cannot recover from the insurer for "his own failure to perform his contract," but can recover for damage other than to his own work, whether or not that work is defective. *Eulich v. Home Indemnity Co.*, 503 S.W.2d 846, 849 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.).

■ The decisive issue here is definition of J & J's work product. The Cruses hired J & J to perform foundation work. Damages due to defective foundation work that affected property other than the foundation do not fall within the terms of Exclusion (o), which "carves out of the policy damage to the particular work performed by the insured, but not the overall damage that the incorporation of the defective work product causes to the entire entity." *Todd Shipyards Corp. v. Turbine Service, Inc.*, 674 F.2d 401, 421 (5th Cir.) (work product not the ship, and not even the entire turbine, but only the components of the turbine that insured attempted to repair or replace), *cert. denied*, 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602, 459 U.S. 1036, 103 S.Ct. 448, 74 L.Ed.2d 603 (1982); *accord Travelers Ins. Co. v. Volentine*, 578 S.W.2d 501, 503–04 (Tex.Civ.App.—Texarkana 1979, no writ) (insured's work or work product was repair of engine valves only, thus coverage extended to other parts of damaged engine).

J & J performed work on the foundation only, not the entire house, and this fact distinguishes the present case from those cases where the general contractor undertakes to construct or reconstruct an entire structure, and damage is limited to that structure. *See, e.g., T.C. Bateson*, 784

2. At the state court trial on the merits, the Cruses offered an exhibit which recited a total of $140,920.32 in damages as follows: (1) reasonable costs of repair, moving and living expenses: $13,320.32; (2) reasonable costs to repair foundation of home: $12,600; (3) mental anguish of Judy Cruse: $50,000; (4) mental anguish of Aubrey Cruse: $50,000; (5) decrease in market value after repairs: $15,000. The trial court awarded $90,940.32 in actual damages, reducing the total claim amount by $50,000, but did not itemize the award.

S.W.2d at 697–98 (business risk exclusion applies because builder contracted to construct entire library and all damage was to building itself); *Sarabia v. Aetna Cas. and Sur. Co.*, 749 S.W.2d 157, 157–58 (Tex.App.—El Paso 1988, no writ) ("major overhaul" of a diesel truck engine, with no damage "after the overhaul other than what [insured] had repaired, replaced or reworked"); *Eulich*, 503 S.W.2d at 849 (construction of entire building; exclusion applied to damage to building after it collapsed due to installation of steel member with less strength than required by contract).

We hold that Exclusion (*o*) only applies to the cost of repair to the foundation itself, and does not apply to the diminution in the value of the Cruses' home that remained after correction of J & J's faulty work, and to repair costs for other property—such as sheetrock, floors, doors, window sills, and various surfaces—to the extent that these particular items of damage require repair other than to the foundation itself. *Cf. Todd Shipyards*, 674 F.2d at 423 (insurers "liable for those damages attributable to the [ship's] 'down time', such as damages for loss of use of the vessel, general expenses from the master's accounts, and pilotage, wharfage, tug, repatriation and recrewing expenses. However, [insurers] are not liable for any costs incurred in repairing and replacing the work product of their insureds, including the cost of inspecting, crating, shipping, and reinstalling the LP turbine.").

**2. Exclusion (k)—Care, Custody, Control**

■ The Hartford policy also excludes coverage for "property damage to ... property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control." .

The Cruses continued inhabiting the house while J & J worked on the foundation. We thus reject the contention that J & J had care, custody, or control of the entire house. "The cases have limited this 'control' to the particular object of the insured's work, usually personalty, and to other property which he totally and physically manipulates." *Goswick v. Employers' Cas. Co.*, 440 S.W.2d 287, 289–90 (Tex. 1969) (insured controlled rods and tubing in repairing oil well pump, but not oil well); *see also Boston Ins. Co. v. Gable*, 352 F.2d 368, 370 (5th Cir.1965) (floor refinishing subcontractor did not have care, custody, control of house).

In the case cited by the district court, *McCord, Condron and McDonald, Inc. v. Twin City Fire Ins. Co.*, 607 S.W.2d 956 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.), a school district hired a general contractor to construct an entire junior high school building, and he accordingly possessed and occupied the building at the time of the accident. The court found "no evidence that [the contractor] 'turned over' the partly completed building to the School District." *Id.* at 958. The Cruses by contrast never surrendered to J & J control of the house and manipulation of its particulars, only its foundation. Thus the limited ambit of Exclusion (k) in this case accords with that of Exclusion (*o*).

**3. "Occurrence"**

■ Policy coverage is triggered by an "occurrence," which "means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Without explanation, the district court ruled that the Cruses failed to show damage caused by an "occurrence." We reject this narrow construction of "occurrence."

Considered in tandem with the business risk exclusion, the "occurrence" requirement illuminates the allocation of risk. Direct (as opposed to consequential) damages that naturally follow from a breach of contract are conclusively presumed to have been in the contemplation of the parties and may therefore constitute expected or intended damages. A comprehensive general liability policy does not cover this cost of doing business. A builder who fails to abide by the specifications of a contract, for example by substituting a weaker

building material, may by that breach produce expected property damage to his or her work, and may thus fail to show a covered "occurrence."

But "an occurrence takes place where the resulting injury or damage was unexpected and unintended, regardless of whether the policyholder's acts were intentional." *Dayton Indep. School Dist. v. National Gypsum Co.*, 682 F.Supp. 1403, 1408 (E.D.Tex.1988), *rev'd on other grounds sub nom. W.R. Grace & Co. v. Continental Cas. Co.*, 896 F.2d 865 (5th Cir.1990). The requisite accident may inhere in the scope of damages. *See Volentine*, 578 S.W.2d at 503 ("Although the allegedly defective *performance* of the work itself might or might not be considered an accident, yet the destruction of the entire engine as a result of the malfunction of one of the repaired valves was certainly unexpected and unintended, and constituted an accident within the meaning of the policy provisions.") (citation omitted, emphasis in original). With the extensive damage to the Cruses' home, we find an occurrence sufficient to trigger coverage.

4. The Duty to Defend

Because some of the claims in the Cruses' state court complaint, if taken as true, state a cause of action within the policy terms, Hartford breached its duty to defend J & J. *See Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir.1983) (insurer's duty to defend determined solely from pleadings). Hartford is therefore bound by the prior liability judgment. *See Employers Cas. Co. v. Block*, 744 S.W.2d 940, 943 (Tex.1988). But we reject the Cruses' contention that Hartford is estopped to contest coverage. The finding of J & J's liability, to which Hartford is now bound, is distinct from the question of coverage, which cannot be created *ex nihilo* by estoppel. *Hargis v. Maryland American General Ins. Co.*, 567 S.W.2d 923, 927 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.) (no binding findings on coverage in prior judgment); *accord Block*, 744 S.W.2d at 943; *Texas*

*United Ins. Co. v. Burt Ford Enterprises*, 703 S.W.2d 828, 833 (Tex.App.—Tyler 1986).[3] The state court judgment against J & J did not address coverage, and Hartford is not bound to any part of the judgment beyond policy coverage.

Actual repair to the damaged foundation falls within the business risk exclusion, and the district court may therefore subtract the cost of this repair from the Cruses' award. The Cruses may, however, recover for repairs to property other than the foundation. And because the Cruses' mental anguish derived from a covered occurrence, they may also recover for this item.

ORDER

Hartford's breach of its duty to defend J & J entitles the Cruses, as J & J's judgment creditors and assignees, to recover: (1) all amounts in the original judgment covered by the insurance policy, as determined on remand by the district court consistent with the foregoing discussion; and (2) "reasonable and necessary attorneys' fees and costs incurred in prosecuting a suit to enforce the judgment against the insurer." *Burt Ford*, 703 S.W.2d at 835.

REVERSED and REMANDED.

---

**3.** The language in *Rhodes* estopping the insurer to contest coverage, 719 F.2d at 120 n. 5, is predicated on an actual determination of coverage in the prior suit. *See Ridgway v. Gulf Life*

*Ins. Co.*, 578 F.2d 1026, 1029 (5th Cir.1978). In the suit between the Cruses and J & J, the state court did not address coverage.