E & R RUBALCAVA CONSTRUC-
TION, INC. and Raul Rubal-
cava, Plaintiffs,

v.

THE BURLINGTON INSURANCE
CO., Defendant.

No. CIV.A. 3:99CV0073M.

United States District Court,
N.D. Texas,
Dallas Division.

May 25, 2000.

Robert H. Dawson, Jr., John C. Tollefson, Stanhope B. Denegre, Goins, Underkofler, Crawford & Langdon, Dallas, TX, for Plaintiffs.

Paul J. Van Osselaer, Jill Marie Cronin, Hughes & Luce, Austin, TX, for Valley Forge Ins. Co.

Roy L. Stacy, Pamela J. Touchstone, Stacy & Conder, Dallas, TX, V. Paige Pace, Margaret R. Mead, Armondo S. Chiu, Pace & Goldston, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

LYNN, District Judge.

Before the Court is Defendant's Motion for Summary Judgment filed November 29, 1999, Plaintiffs' request for partial summary judgment *sua sponte*, briefs in support thereof, and all responses and replies thereto. The Court heard oral argument on March 16, 2000.

Plaintiffs sue for a declaration that Defendant has a duty to defend Plaintiffs in two lawsuits filed against them: *Goff Homes, Inc. v. E & R Rubalcava Construction, Inc.*, Cause No. DV–98–03992–F in the 116th Judicial District Court of Dallas County, Texas (the "Goff Homes Lawsuit") and *Great American Lloyds v. Jones, et al.*, Cause No. CC–98–06302–C in County Court at Law No. 3 of Dallas County, Texas (the "Great American Lawsuit") (collectively, the "underlying lawsuit").[1] On June 1, 1999, Defendant counterclaimed, seeking a declaration that it had, and has, no duty to defend or indemnify Plaintiffs in the underlying lawsuit. Defendant moved for summary judgment on Plaintiffs' claims, and on its own claims for declaratory relief. In [Plaintiffs'] Response in Opposition to [Defendant's] Summary Judgment Motion, Plaintiffs ask the Court *sua sponte* to render partial summary judgment, declaring that Defendant

---

1. Great American has since intervened in the Goff Homes lawsuit and non-suited the Great American lawsuit.

has a duty to defend, and owes defense costs and attorney's fees incurred to date in this and the underlying lawsuit. The Court, after providing to the parties the procedural safeguards set out in Fed. R.Civ.P. 56, including allowing ten days for Defendant to respond to Plaintiffs' request for summary judgment *sua sponte*, reviewed further briefing filed on behalf of the Plaintiffs and Defendant. Having considered the record and the applicable law, for the reasons stated below, the Court DENIES Defendant's Motion for Summary Judgment, and GRANTS partial summary judgment, *sua sponte*, for the Plaintiffs.

## I. Background

On December 11, 1998, Plaintiffs E & R Rubalcava Construction, Inc. and Raul Rubalcava (collectively, "Rubalcava") filed this suit against the Burlington Insurance Company ("Burlington") seeking a declaration that Burlington has a duty to defend Plaintiffs in the underlying lawsuit. *See* Plaintiffs' Original Complaint. There are two issues raised by the summary judgment motions: whether in the underlying lawsuit Burlington has (1) a duty to defend, and (2) a duty to indemnify Plaintiffs in the underlying lawsuit.

The following are the undisputed facts germane to the Court's determination. Burlington issued to Raul Rubalcava d/b/a E & R Rubalcava Construction, Inc. general commercial liability policies numbered B0170G000123, B0170G000123 R–1,

B0170G000123 R–2, B0168G100359, and B0168G100466 for the policy periods and renewals spanning January 22, 1994 through January 23, 1998. Copies of the insurance policies were filed as part of the parties' Joint Appendix, Exhibits C, D, E, F and G.[2]

The underlying lawsuit arises from claims by purchasers of homes from general contractor Goff Homes. E & R Rubalcava Construction, Inc. contracted with Goff Homes to construct the foundations on such homes. Goff Homes was sued by its purchasers, and it in turn sued Rubalcava, asserting breach of contract and contractual indemnity theories of recovery. (*See* Jt.App. at Ex. I). A portion of the homeowner litigation was arbitrated and resulted in awards for two homeowners. A third homeowner settled his claims. Goff Homes sought to recover from Rubalcava amounts that it was obligated to pay pursuant to the settlement and arbitrations, plus attorney's fees, costs and expenses. Goff Homes also sought to recover additional sums for breach of E & R Rubalcava Construction, Inc.'s contract with Goff Homes, which contract it alleged was personally guaranteed by Raul Rubalcava, so that he was subject to damages as well. Goff Homes' Original Petition was filed on May 20, 1998, and it amended its Petition on April 8, 1999.

In the Great American Lawsuit, E & R Rubalcava Construction, Inc. was sued on July 1, 1998, by the Great American

2. Defendant argues that the pleadings in the underlying litigation do not affirmatively allege the time when damage occurred, and therefore there is no showing that the alleged damage manifested itself or became apparent during a relevant policy period. However, the record shows that the contract between Goff Homes and E & R Rubalcava Construction, Inc. is dated February 17, 1995, two years after the issuance of the first Burlington policy, and that the last policy expired on January 23, 1998. Policies in effect between February 1995 and January 1998 would be potentially germane. Specifically, Goff Homes' pleading alleges, "the damages first became reasonably apparent in 1996 or 1997." Goff Homes' First Am. Pet. at 3. The Court finds this allegation sufficient, as a preliminary matter, to invoke Burlington's potential coverage under the appropriate policies and thus to trigger the duty to defend.

Lloyds Insurance Company ("Great American") for the recovery of money paid by Great American to homeowners who had sued Goff Homes for faulty construction. Great American's claims are virtually identical to Goff Homes' claims and therefore both claims will be analyzed together.

## II. Summary Judgment Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir.1991). Both parties urge, and the Court agrees, that, as to the duty to defend, this case presents no genuine issues of material fact, and that the case should be decided as a matter of law.

## III. Analysis and Decision

■ Both Rubalcava and Burlington acknowledge that a declaratory judgment is a proper manner in which to resolve disputes over liability insurance coverage. *See Maryland Casualty Co. v. Pacific Oil Co., et al.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

### A. Duty to Defend

The applicable policy language [3] provides: "The company will pay on behalf of the 'insured' all sums which the 'insured' shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence ..." The basic issues raised by summary judgment are whether there has been an "occurrence" which caused "property damage."

"Occurrence" is defined in the policy as "an accident, including continual or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

As Burlington concedes in its brief, the case of *Federated Mut. Insur. Co. v. Grapevine Excavation, Inc. et al.*, 197 F.3d 720 (5th Cir.1999) involves coverage issues "strikingly similar to the instant case." In *Grapevine Excavation*, the original contractor filed suit against GEI, the subcontractor, seeking a declaratory judgment that GEI was financially responsible for damage to the parking lot on which it did excavation, backfilling, and compacting work in connection with the contractor's construction of the lot. GEI notified its insurers, which sought a declaratory judgment that it had no duty to defend because of the absence of an "occurrence." Granting the insurer's summary judgment, the trial court found no duty of the insurer to defend the subcontractor, determining that the subcontractor's faulty performance under its subcontract was an intentional act, which, therefore, did not constitute an "occurrence" under the applicable policies.

■ Citing policy language substantially similar to the case at hand, the Fifth Circuit reversed the trial court, finding that faulty workmanship constitutes an "accident" when negligent acts of the insured cause damages that are "undesigned" and "unexpected." *Id.*, 197 F.3d at 725; *Massachusetts Bonding & Insur. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396 (Tex. 1967). As the Fifth Circuit noted, cases following *Orkin* and its progeny have consistently held that damage caused to the

---

**3.** Each of the five policies issued by Burlington under which Rubalcava was insured contains this same language. *See* Jt.App. at Ex. C, D, E, F and G. For purposes of this Memorandum Opinion and Order, the Court will collectively refer to all policies as "the policy."

work product of a third party (Goff Homes), as opposed to that of the insured (Rubalcava), "is presumed to have been unexpected and, therefore, constitutes an accident or an occurrence." *Id.* at 725. In this case, in its First Amended Petition in the underlying lawsuit, Goff Homes alleged damage to the homes constructed by it, which is the work and property of a third party. *See also Hartford Casualty Co. v. Cruse*, 938 F.2d 601, 604–05 (5th Cir.1991) (extensive damage to home resulting from contractor's faulty foundation work gives rise to covered "occurrence" under contractor's comprehensive general liability policy).[4]

■ Based on *Grapevine Excavation* and *Cruse*, property damage to another person's property arising from faulty workmanship of the insured is an "occurrence" under the applicable policy language. *Id.* Goff Homes' First Amended Petition (in the case in which Great American later intervened) explicitly states that the damages to the homeowner's homes were caused:

> in whole or in part by the negligence of [Ru balcava]...[that] went far beyond mere differential settlement of the slab. It proximately caused the houses to develop cracks in the walls and ceiling, kept doors from shutting, windows from operating properly, wood framing dis-

tress and cracking, and similar damage resulting from the weak slab.

Goff Homes' First Am. Pet. at 3.

This Court is persuaded that the faulty workmanship with which Rubalcava is charged by Goff Homes is, in effect, a claim of negligence, which constitutes an "occurrence," as such term is used in the applicable policies. Rubalcava's allegedly negligent acts, pouring faulty foundations, led to "undesigned" and "unexpected" "property damage," as alleged in Goff Homes' First Amended Petition. The underlying lawsuit was instigated based on damage to the homes, which resulted from Rubalcava's faulty foundations.[5] For this reason, Burlington's argument that it has no duty to defend Rubalcava because property damage was not specifically alleged in the underlying lawsuit is without merit.

At oral argument, the parties conceded that Burlington's duty to defend is triggered if at least one of the several claims in the underlying lawsuit potentially falls within the scope of coverage. The Court finds that at least one of Goff Homes' claims against Rubalcava potentially falls within the scope of coverage. Although Goff Homes denominates its claims in terms of breach of contract and contribution/indemnity, the allegations against Rubalcava in Goff Homes' pleadings sound in negligence. Goff Homes' First Am. Pet. at 3. These claims fall within the scope of Burlington's purported coverage. The Court thus finds that Burlington has a duty to defend Rubalcava.[6]

---

4. Goff Homes' Original Petition, filed May 20, 1998, also includes allegations of substandard performance by Rubalcava, which caused "major structural defects ... which significantly compromised the safety, sanitation and serviceability of the houses." Goff Homes' Orig. Pet. at 3. Although not as detailed as Goff Homes' First Amended Petition, the Original Petition is sufficient to invoke a potential duty to defend, alleging "undesigned" and "unexpected" property damage.

5. As was the case with the American Lloyds policy involved in the *Grapevine Excavation* case, *supra*, the policy here excluded property damage to Rubalcava's own work arising from that work. In this case, however, it is clear, as it was in *Grapevine Excavation*, that the allegations against Rubalcava are not only that its own concrete foundation work was damaged, but that the homes were damaged as well. Goff Homes' First Am. Pet. at 3.

6. Counsel for Burlington attempts to distinguish this case from *Grapevine Excavation* by

■ As the court instructed in *Grapevine Excavation,* Texas courts follow the Eight Corners Rule in determining whether the insurer has a duty to defend. Under that rule, all the insured need do is prove up its policy and the pleading by which it has been sued. If the insurer attempts to rely on any exclusions, as in the case at hand, the insurer bears the burden of proving that one or more of the exclusions apply. Burlington has asserted exclusions, but this Court concludes that the exclusions cited by Burlington are inapplicable.

■ First, the *contractual liability* exclusion does not apply here. Essentially, Burlington's policy excludes liability assumed by Rubalcava under any contract or agreement by which Rubalcava agrees to indemnify a third party for that party's sole negligence. Here, however, Rubalcava is not being sued as the contractual indemnitor of Goff Homes' conduct, but rather for Rubalcava's own conduct. Therefore, the exclusion is inapplicable. *See Grapevine Excavation,* 197 F.3d at 726. Rubalcava is liable to Goff Homes under generally applicable contract law, for damage caused by Rubalcava's negligent failure to perform its contractual duties according to the specifications in the contract. Where liability could be imposed either pursuant to the contractual indemnity or generally applicable legal principles, the contractual liability exclusion does not work to deny coverage. An obligor who intends his performance to be correct but who negligently falls short of the appropriate standard and causes unintentional

damage is a negligent tortfeasor whose conduct constitutes an accidental occurrence under a policy. *Id.* at 726. In other words, the issue is whether the contractual indemnity provision is the sole basis for Goff Homes' claims against Rubalcava. The Court finds that it is not, so in this case, that exclusion does not eliminate coverage and the duty to defend.

■ Second, the *business risk* exclusion relied upon by Burlington, which excludes coverage of an insured as "to that particular part of any property...out of which any 'property damage' arises, or the restoration, repair, or replacement of which has been made or is necessary by reason of faulty workmanship...by or on behalf of the insured" (Jt.App. at Ex. C, D, E, F, G), only applies to the cost of repair of the foundation work itself, not to the cost of repair of any other damage to the homes in issue. *See Cruse,* 938 F.2d at 603. The underlying lawsuit clearly seeks more than the repair of the allegedly faulty foundation. The determination of whether this exclusion applies must await the outcome of the underlying lawsuit. It does not go to the duty to defend.

Third, the Court concludes, as a matter of law, that the *collapse hazard* exclusion is not applicable because the loss alleged is not "structural property damage" as that phrase is defined in the applicable policy language. Indeed, the collapse hazard exclusion apparently excludes coverage for damage resulting from explosion, collapse, and underground property damage hazards, none of which are applicable here.

pointing out that in this action, in effect, Goff Homes' damages are equivalent to the arbitration awards and settlement agreement, which is nothing more than a claim for contribution or indemnity, and that these in turn are claims for economic loss, and not property damage. This Court is not persuaded that Rubalcava's coverage (at least its right to a

defense) can be lost as a result of Goff's strategic decision to sue Rubalcava only in a separate suit, rather than in the original homeowners' actions. As to the economic loss issue, that issue cannot be finally determined at this juncture. It goes to the ultimate indemnity claim, not the duty to defend.

### B. Duty to Indemnify

■ The policy provides that the insurer is obligated to defend its policy holder "even if any of the allegations of the suit are groundless, false or fraudulent." (*See* Jt.App. Ex. G at 111). The only issue for this Court in connection with the duty to defend is, therefore, whether the allegations of the underlying lawsuit might be covered under the policy. The duty to defend under Texas law is significantly broader in scope than is the duty to indemnify. *See Gulf Chemical & Metallurgical Corp. v. Assoc. Metals and Minerals Corp.,* 1 F.3d 365, 369 (5th Cir.1993). For example, if the underlying lawsuit alleges facts within the scope of coverage, the insurer would ordinarily be held to the duty to defend, no matter how groundless or baseless the claims might be. *See Nat'l Union Fire Insur. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 140 (Tex.1997). However, because the underlying claim may be baseless, a duty to indemnify might not arise. Accordingly, the Court hereby reserves judgment on whether Burlington has a duty to indemnify Rubalcava. That decision must be deferred until the underlying litigation against Rubalcava is resolved. *See McKinney Builders II, Ltd. v. Nationwide Mut. Ins. Co.,* 1999 WL 608851 (N.D.Tex. August 11, 1999).

### C. Attorney's Fees

Upon this Court's finding for Rubalcava of a duty to defend, Rubalcava now requests the Court to award its reasonable attorney's fees. However, as the Fifth Circuit explained in *Grapevine Excavation,* Texas appellate courts and the Fifth Circuit have long disagreed as to the appropriateness of awarding attorney's fees in an insurance dispute over coverage. *Grapevine Excavation,* 197 F.3d at 728. The Court in *Grapevine Excavation* decided that the most principled solution to determining attorney's fees under these circumstances was to ask the Texas Supreme Court, by certified question, to explain the proper interpretation of the relevant statutory authority, Chapter 38 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE. The Court retained jurisdiction over the attorney's fees issue pending the answer to the certified question; or, if no answer was forthcoming, then for the purpose of deciding the issue itself. *Id.* at 729. Accordingly, until the Fifth Circuit addresses the issue again in *Grapevine Excavation,* this Court defers judgment on whether to award attorney's fees to Rubalcava.[7]

SO ORDERED.

---

7. In its reply to Burlington's supplemental response, Rubalcava also asks the Court to order a trial on punitive damages. However, this Court finds that this is not an appropriate cause for punitive damages. Further, neither party has alleged or pleaded for such a remedy until the last round of briefing, filed April 7, 2000. Such a claim should have been pleaded earlier. Therefore, to the extent Rubalcava requests this relief, it is denied.