SOUTHWEST TANK AND TREATER
MANUFACTURING COMPANY,
Plaintiff,

v.

MID–CONTINENT CASUALTY COMPANY, Mid–Continental Insurance Company and Oklahoma Surety, Defendants.

No. 6:01–CV–542.

United States District Court,
E.D. Texas,
Tyler Division.

Feb. 4, 2003.

---

Clay Wilder, Wilder & Wilder, Henderson, TX, for plaintiff.

Marie K Miller, Miller & Burke, San Antonio, TX, for defendant.

## MEMORANDUM OPINION

DAVIS, District Judge.

Plaintiff Southwest Tank and Treater Manufacturing Company ("Southwest Tank") filed this declaratory judgment action against Defendants Mid–Continent Casualty Company ("Mid–Continent"), Mid–Continental Insurance Company, and Oklahoma Surety.[1] Mid–Continent filed a counterclaim against Southwest Tank seeking a declaration that it has no duty to defend or indemnify Southwest Tank. The matter came for trial on the merits without a jury and was taken under submission. After consideration of the evidence presented and the applicable law, the Court makes the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. To the extent that any conclusion of law is deemed to be a finding of fact, it is adopted as such; and likewise, any finding of fact that is deemed to be a conclusion of law is so adopted.

## BACKGROUND

This is a declaratory judgment action seeking a declaration of rights and duties under a Commercial General Liability policy (hereinafter "Policy") issued by Mid–Continent to Southwest Tank under policy number 04–GL–000030666 with a policy period from May 6, 2000 to May 6, 2001. Southwest Tank seeks a declaration that Mid–Continent has a duty to defend and indemnify Southwest Tank in a lawsuit styled, *Trinity Asphalt Co. v. Southwest Tank & Treater Mfg. Co.*, pending in the 4th Judicial District Court, Rusk County, Texas (hereinafter "underlying lawsuit"). Mid–Continent has filed a counterclaim seeking a declaration that it has no duty to

---

1. On December 19, 2002, the Court granted Defendants' Second Motion for Summary Judgment as to all claims asserted against Mid–Continental Insurance Company and Oklahoma Surety. *See* December 19, 2002 Order (Docket # 38). Thus, Mid–Continental Insurance Company and Oklahoma Surety are no longer parties to this lawsuit.

defend or indemnify Southwest Tank in the underlying lawsuit.

### The Accident

The underlying lawsuit arises out of damage to a tank, which occurred on December 12, 2000. Southwest Tank was hired by Trinity Asphalt to make modifications to a large steel storage tank owned by Trinity Asphalt. The modifications consisted of installing heating elements (fire heating tubes) within the confines of the tank to allow for temperature regulation of the tank's contents. Sammy Rogers ("Rogers"), president of Southwest Tank, testified that in order to install the fire heater tubes, Southwest Tank chose to cut three equidistant 5 feet by 10 feet holes in the steel tank using a cutting torch. Southwest Tank would cut each hole at separate times, taking the plate cut from the tank back to its facilities for installation of the fire heating tube to the interior of the plate. Once the fire heating tube was installed, Southwest Tank would return the plate to the tank and reweld it just as it was removed. Southwest Tank successfully completed this process on the first opening. However, while cutting the second opening a fire broke out and the tank exploded, resulting in a complete loss of the tank. Rogers testified that he did not know the cause of the fire. The cost of replacing the tank is between $250,000.00 and $350,000.00.[2]

### The Insurance Policy

The policy, in pertinent part, provides:

**SECTION I–COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement.**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

    . . . . .

    b. This insurance applies to "bodily injury" and "property damages" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence". . . .

    . . . . .

2. Exclusions.

This insurance does not apply to:

    . . . . .

    j. **Damage to Property**

    "Property damage" to:

    . . . . .

    (4) Personal property in the care, custody or control of the insured;

    (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    . . . . .

---

2. Rogers testified that Trinity Asphalt has paid his company between $280,000.00 and $300,000.00 to build a replacement tank.

## SECTION V DEFINITIONS
. . . .
**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

.       .       .       .       .

**15.** "Property damage" means:
    **a.** Physical injury to tangible property, including all resulting loss of use of that property . . . .
    **b.** Loss of use of tangible property that is not physically injured . . . .

.       .       .       .       .

**19.** "Your work" means:
    **a.** Work or operations performed by you or on your behalf; and
    **b.** Materials, parts or equipment furnished in connection with such work or operations.

.       .       .       .       .

Southwest Tank timely requested defense and coverage in the underlying lawsuit from Mid–Continent pursuant to the Policy. Mid–Continent denied both defense and coverage. At trial, in this case, Mid–Continent asserted that exclusions j(4), j(5), and/or j(6) preclude coverage of all damages.

## DUTY TO DEFEND

### Applicable Law

■■■ The parties do not dispute that Texas law governs this diversity action and informs the interpretation of the Policy. *See Taylor v. Travelers Ins. Co.,* 40 F.3d 79, 81 (5th Cir.1994). Under Texas law, the insured has the burden to prove that coverage exists. *Wallis v. United Servs. Automobile Ass'n,* 2 S.W.3d 300, 303 (Tex App.-San Antonio 1999, pet. denied). The insurer is required to establish that one or more policy exclusions apply. *Harken Exploration Co. v. Sphere Drake Ins.,* 261 F.3d 466, 471 (5th Cir.2001). The underlying lawsuit alleges damage to a tank. This

Court finds that such alleged damage constitutes "property damage" within the meaning of the Policy. The Court also finds that the explosion of the tank constitutes an "occurrence" as defined by the Policy.

### "Eight Corners" Rule

■■■ Under Texas insurance law, the general rule is that an insurer is required to defend any lawsuit in which at least some of the allegations in the pleadings potentially state a claim covered by the policy. *Lafarge Corp. v. Hartford Cas. Ins. Co.,* 61 F.3d 389, 393 (5th Cir.1995). "An insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997). The duty to defend is determined by analyzing the latest pleading upon which the insurer based its refusal to defend the action. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 99 F.3d 695, 701 (5th Cir.1996).

■■■ Under the "eight corners" rule, also known as the "complaint allegation" rule, the allegations in the pleadings are liberally interpreted and their truth presumed. *Lyons v. State Farm Lloyds and Nat. Cas. Co.,* 41 S.W.3d 201, 204 (Tex. App.-Houston [14th Dist.] 2001, writ denied). In *Merchants Fast Motor Lines, Inc.,* the Texas Supreme Court stated:

> Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a

liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor.

*Merchants Fast Motor Lines, Inc.,* 939 S.W.2d at 141 (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965)). Coverage is determined by the factual allegations that show the origin of the damages rather than the legal theories alleged. *Id.* A court is required to accept the insured's construction of an exclusionary clause so long as that construction is reasonable. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex.1991). However, the "complaint allegation" rule is not rigidly applied in every case, and in certain cases the court is required to look to extrinsic evidence.

### Extrinsic Evidence Exception

In the case before the court the eight corners of Plaintiff's First Amended Petition are very sparse and provide little insight to the issue of coverage. The only allegations contained in Plaintiff's First Amended Petition are that:

• Trinity Asphalt incurred damages "as the result of an incident which occurred on or about December 12, 2000, in Rusk County, Texas."

• "this incident and [Trinity Asphalt's] resulting damages were proximately caused by the negligence of Defendant Southwest Tank & Treater Mfg. Co.," and

• its damages include "costs of repairing and/or replacing said [t]ank and cleaning up the premises."

▮▮▮ Southwest Tank argues that this Court is prohibited from considering extrinsic evidence in determining whether there is a duty to defend. The Court disagrees. In certain circumstances, when the underlying complaint does not resolve the applicability of policy exclusions, extrinsic evidence beyond that contained in

the "eight corners" will be permitted in order to aid in determining whether the insurer has a duty to defend. *See Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.,* 203 F.Supp.2d 704, 714 (S.D.Tex. 2000) (citing *State Farm Fire & Cas. Co. v. Wade,* 827 S.W.2d 448, 452 (Tex.App.-Corpus Christi 1992, writ denied) ("[w]hen the petition in the underlying lawsuit does not allege facts sufficient for a determination of whether those facts, even if true, are covered by the policy, the evidence adduced at the trial in a declaratory judgment action may be considered along with the allegations in the underlying petition")); *John Deere Ins. Co. v. Truckin' U.S.A.,* 122 F.3d 270, 272 (5th Cir.1997) (extrinsic evidence may be considered in determining existence of a duty to defend where complaint allegations were insufficient to determine coverage under the policy). A Texas court of appeals summarized the rule on extrinsic evidence as follows:

Where the insurance company refuses to defend its insured on the ground that the insured is not *liable* to the claimant, the allegations in the claimant's petition control, and facts extrinsic to those alleged in the petition *may not be used* to controvert those allegations. But, where the basis for the refusal to defend is that the events giving rise to the suit are *outside the coverage* of the insurance policy, facts extrinsic to the claimant's petition *may be used* to determine whether a duty to defend exists.

*Gonzales v. Am. States Ins. Co. of Tex.,* 628 S.W.2d 184, 187 (Tex.Civ.App.-Corpus Christi 1982, no writ) (emphasis in original).

▮▮▮ Applying these rules to the instant case, the Court finds that consideration of extrinsic evidence is proper in this case. Clearly, the petition fails to describe the incident nor allege any facts surrounding the incident. Mid–Continent has de-

nied a defense because the facts giving rise to the underlying lawsuit are excluded from coverage under the policy. Consequently, the Court will consider extrinsic evidence in determining whether Mid–Continent has a duty to defend.

### Exclusion j(6)

Mid–Continent asserts that exclusions j(4), j(5), and/or j(6) preclude coverage of all damages. The Court finds exclusion j(6) applicable in this case. *See Hi–Port, Inc. v. Am. Int'l Specialty Lines Ins. Co.,* 22 F.Supp.2d 596, 599 (S.D.Tex.1997) (any single exclusion is sufficient to exclude coverage).

Exclusion j(6) excludes from coverage "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." The rationale of excluding coverage for an insured's incorrect work is to protect the insurer from "attempts to recover funds to correct deficiencies caused by the contractors' questionable performance." *T.C. Bateson Constr. Co. v. Lumbermens Mutual Cas. Co.,* 784 S.W.2d 692, 695 (Tex.App.[14th Dist.] 1989, write denied). This exclusion "demonstrates the insurers' belief that the cost of not performing well is a cost of doing business and not considered part of the risk sharing scheme for which general liability policies are written." *Id.* at 695. Thus, a contractor "cannot recover from the insurer for 'his own failure to perform his contract,' but can recover for damage other than to his own work, whether or not that work is defective." *See Hartford Cas. Co. v. Cruse,* 938 F.2d 601, 603 (5th Cir.1991) (quoting *Eulich v. Home Indem. Co.,* 503 S.W.2d 846, 849 (Tex.Civ.App.-Dallas 1973, writ ref'd n.r.e)).

In the case before the Court, Southwest Tank was hired to make modifications to a large steel storage tank owned by Trinity Asphalt by installing fire heating tubes to regulate the temperature of the tank. To accomplish this task, Southwest Tank chose to install the heater tubes by cutting three holes in the tank. The tank exploded while Southwest Tank was cutting a hole in the wall of the tank The tank was a self-contained, collective unit, which constituted a single item of property. This single item of property was damaged while Southwest was performing its work on it.

■ "Your work" is defined under the Policy to include "[w]ork or operations performed by you or on your behalf," and "[m]aterials, parts or equipment furnished in connection with such work or operations." *See* Pl.'s Ex. 1, at 13.[3] The definition of "your work" in the Policy is broad enough to include the work that Southwest Tank performed on the tank. Further, the Court the language in the exclusion-"incorrectly performed"-excludes coverage for the negligence that was alleged by Trinity Asphalt in the underlying lawsuit. *See, e.g., Gar–Tex Constr. Co. v. Employers Cas. Co.,* 771 S.W.2d 639, 643 (Tex.App.-Dallas 1989, write denied) ("language in the endorsement", *i.e.,* "faulty workmanship," excludes coverage for negligence *or* failure to follow specifications); *Eulich,* 503 S.W.2d at 849 (same).

■ Generally, faulty workmanship exclusions cover only damage to the work product itself, not damage to third party property. *See General Mfg. Co. v. CNA Lloyd's of Texas,* 806 S.W.2d 297, 300 (Tex. App.-Dallas 1991, writ denied). This rule finds support in the express language of the exclusion. The provision excludes

---

**3.** The term also encompasses "[w]arranties or representations made at any time with respect to the fitness, quality, duration, performance or use of 'your work'," and "[t]he providing of or failure to provide warnings or instructions." *See* Pl.'s Ex. 1, at 13.

damage to "that particular part of any property" on which " 'your work' was incorrectly performed." Therefore, the exclusion would not apply to damage to adjoining property on which one was not working even though it was caused by faulty workmanship on the principal property. The term "particular," which is defined as "[o]f, or pertaining to, a single . . . thing." BLACK'S LAW DICTIONARY 1119 (6th ed.1990), supports the distinction between the property that was being worked on and separate property. *See also E&R Rubalcava Contr., Inc. v. The Burlington Ins. Co.*, 147 F.Supp.2d 523, 528 (N.D.Tex.2000) (insured contracted to construct foundations to homes; the court held that "the *business risk* exclusion [j(6) ] . . . only applies to the cost of repair of the foundation work itself, not to the cost of repair of any other damage to the homes in issue").

The Court has not found any Texas cases interpreting exclusion j(6) or addressing the meaning of "[t]hat particular part." However, the majority of other jurisdictions that have interpreted this phrase have held that "[t]hat particular part" includes the entire piece of property on which the insured was working at the time of the accident. *See, e.g., Jet Line Servs., Inc. v. Am. Employers Ins. Co.*, 404 Mass. 706, 537 N.E.2d 107, 111 (1989) (" 'that particular part of any property' refers to the entire tank and not just to the bottom of the tank that Jet Line personnel were cleaning at the moment of the explosion"); *Am. Equity Ins. Co. v. Van Ginhoven*, 788 So.2d 388 (Fla.App.2001) (insured hired to perform spot repairs; damage to entire pool excluded); *Goldsberry Operating Co., Inc. v. Cassity, Inc.*, 367 So.2d 133 (La.App.1979) (insured perforating well at one depth; damage to entire well excluded); *cf. Vinsant Elec. Contractors v. Aetna Cas. Surety Co.*, 530 S.W.2d 76 (Tenn.1975) (insured replacing circuit breakers; damage to entire switchboard excluded); *William Crawford, Inc. v. Travelers Ins. Co.*, 838 F.Supp. 157 (S.D.N.Y.1993) (applying New York law) (fan to humidify plaster in living room caught fire; fire and smoke damage to entire apartment excluded).[4]

Southwest Tank was hired to work on the tank and damages were requested in the underlying suit for the replacement of the tank. The Court cannot construe this provision to limit the exclusion to the precise and isolated spot upon which the work was being done-where the holes were being cut.[5] Southwest was hired to install heating tubes in the tank. This included the entire tank. Southwest merely chose the method of accomplishing this task by removing three sections from the tank, to be later reinstalled with the heating tubes fabricated into the plates. The entire tank was being worked on by Southwest. Under the factual situation in this case, the Court finds that the tank, in its entirety, or as a unit, is "[t]hat particular part of any property." Accordingly, the Court finds that exclusion j(6) of the Policy excludes coverage in this case and, therefore, Mid-Continent does not have a duty to defend Southwest Tank in the underlying lawsuit.

---

**4.** The Court realizes that these cases were interpreting exclusion j(5). Nevertheless, because exclusion j(5) contains the language "that particular part," much of the same analysis as discussed with exclusion j(5) applies with equal force to exclusion j(6).

**5.** This case is similar to a situation where a contractor undertakes to construct or reconstruct an entire structure and damage is limited to that structure. *See, e.g., T.C. Bateson*, 784 S.W.2d at 697–98 (business risk exclusion applied because builder contracted to construct entire library and all damage was to building itself); *Eulich*, 503 S.W.2d at 849 (construction of entire building—exclusion applied to damage to building after it collapsed due to installation of steel member with less strength than required by contract).

Southwest Tank argues that even if the Court found that the exclusions applied to the destruction of the Tank, Trinity Asphalt's claim for "loss of use" is still covered under the Policy. However, as Mid-Continent correctly points out, "Property damage" under the Policy is defined as "Physical injury to tangible property, *including all resulting loss of use of that property.*" Pl.'s Ex. 1, at 13 (emphasis added). Therefore, "loss of use" of the tank is included within the definition of "[p]roperty damage" under the Policy. *See, e.g., AIU Ins. Co. v. Mallay Corp.,* 938 F.Supp. 407, 411 (S.D.Tex.1996).

## DUTY TO DEFEND

The duty to indemnify is separate and distinct from the duty to defend. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821–22 (Tex.1997) (the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit). The duty to defend is broader than the duty to indemnify. *See Am. States Ins. Co. v. Bailey,* 133 F.3d 363, 368 (5th Cir.1998); *Taylor v. Travelers Ins. Co.,* 40 F.3d 79, 81 (5th Cir.1994). Consequently, if the insurer has no duty to defend the insured, no duty to indemnify exists. *See Bailey,* 133 F.3d at 368 (citing *Western Heritage Ins. Co. v. River Entm't,* 998 F.2d 311, 315 (5th Cir.1993) ("logic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify")). Accordingly, the Court holds that because Mid-Continent has no duty to defend Southwest Tank, and it follows that it has no duty to indemnify Southwest Tank.

## CONCLUSION

In sum, the Court concludes that exclusion j(6) applies to exclude coverage and, therefore, Mid-Continent does not have a duty to defend Southwest Tank in the underlying lawsuit. Further, the Court finds that Mid-Continent does not have a duty to indemnify Southwest Tank in the underlying lawsuit. Accordingly, the Court finds in favor of Mid-Continent and against Southwest Tank. An appropriate final judgment consistent herewith shall be issued this day.